# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47122

GALUST BERIAN, a single individual; and
JULIA BERIAN, a single individual,

    Plaintiffs-Counterdefendants-
    Appellants,

v.

OVANES BERBERIAN, a single individual;
and SOCORRO BERBERIAN, a single
individual,

    Defendants-Counterclaimants-
    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2020 Term

Opinion Filed: November 2, 2020

Melanie Gagnepain, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. Stevan H. Thompson, District Judge.

The district court's order granting partial summary judgment is <u>affirmed</u> in part, and <u>reversed</u> in part. The partial judgment is <u>affirmed</u> in part, and <u>vacated</u> in part.

Dunn Law Office, PLLC, Rigby, and Whittington Law Office, Chtd., Idaho Falls, for appellants, Galust and Julia Berian. Robin D. Dunn argued.

Hopkins Roden Crockett Hansen & Hoopes, PLLC, Idaho Falls, for respondents, Ovanes and Socorro Berberian. Lary S. Larson argued.

———————————

STEGNER, Justice.

This case arises out of a number of disputes between two brothers, Galust Berian (Galust) and Ovanes Berberian (Ovanes). In June 2017, Galust and Julia Berian (Julia is the daughter of Galust and the niece of Ovanes) were arrested after Ovanes reported to law enforcement that Galust and Julia had stolen several items from him. After the reported theft, Galust and Julia were arrested for unlawful entry onto property shared by Ovanes and his ex-wife, Socorro Berberian (Socorro), and for resisting arrest. After these charges were dropped, Galust and Julia brought a lawsuit against Ovanes and Socorro, alleging intentional infliction of emotional distress, negligent

1

infliction of emotional distress, invasion of privacy, malicious prosecution, defamation, breach of contract, fraud, unjust enrichment, quantum meruit, and conversion. Ovanes filed a counterclaim seeking redress for conversion.

Ovanes and Socorro moved for summary judgment on all of Galust's and Julia's claims, which the district court granted except for their conversion claim. The district court also certified its grant of partial summary judgment as final pursuant to I.R.C.P. 54(b), a process which allowed Galust and Julia to appeal the district court's decision even though all of the claims between the parties had not been resolved.

Galust and Julia appeal from the grant of summary judgment, arguing that summary judgment was improper because genuine issues of material fact exist with respect to each of their other causes of action. Ovanes and Socorro respond, arguing summary judgment was proper because Galust and Julia failed to establish one or more elements of each of their claims. In addition, Ovanes and Socorro argue that Galust and Julia failed to establish a genuine factual issue in regard to Ovanes' and Socorro's affirmative defenses, including the judicial privilege doctrine and the statute of limitations.

For the reasons outlined in this opinion, we affirm the grant of summary judgment regarding the tort claims of invasion of privacy and negligent infliction of emotional distress, as well as the contract and fraud claims. However, we reverse the grant of summary judgment regarding the claims of intentional infliction of emotional distress, malicious prosecution, and defamation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Galust and Ovanes are Russian artists who immigrated to the United States and now reside in eastern Idaho. From April to June of 2017, they were involved in a series of disputes in which Ovanes claimed that Galust and his daughter, Julia, had stolen property from him, including multiple paintings and frames, a trailer, and a water pump. According to Ovanes, while he was teaching in California, his assistant notified him that his painting, titled "The Approaching Storm," was missing. After returning home, Ovanes found "dozens of other paintings and frames missing" from his home and storage shed. He also discovered that his flatbed trailer was missing. Ovanes' security system had been disabled during the thefts; Ovanes suspected that Galust had taken the items as he was among the few people with knowledge of the location of the security cameras and

2

their power supply. On May 9, 2017, Ovanes reported the purported theft by Galust to the Jefferson County Sheriff's Office.

Ovanes claims that later, on June 19, 2017, Galust and Julia drove a van onto his property,[1] towing Ovanes' flatbed trailer. Ovanes alleges that the two broke into his home and returned "The Approaching Storm" painting. Galust and Julia then went to Ovanes' storage shed, and allegedly stole a water pump and several more paintings. All of this activity was purportedly recorded on Ovanes' security cameras.[2] Ovanes called the Jefferson County Sheriff's Office to report the trespass and break-in while Galust and Julia were still on his property.

Later that same night, Ovanes alleges that Galust and Julia returned to his home and instigated an argument with Ovanes.[3] During that time, Jefferson County Sheriff's deputies arrived to investigate the alleged break-in. The deputies arrested Galust for unlawful entry, and arrested Julia for resisting an officer.

Ovanes provided a written statement to the Jefferson County Sheriff's Office, detailing the break-in and the missing items. Ovanes argues that this statement was accurate to the best of his knowledge and contained his honest belief that Galust and Julia had stolen his property.

Galust provides a much different explanation of how the painting ended up in his possession, and what happened the night he returned it. According to Galust, in the spring of 2017, Ovanes had mentioned his struggles with completion of "The Approaching Storm" painting. Galust alleged that he offered to re-work the painting for Ovanes and took the painting back to his studio to complete it.[4] Galust maintained that even though Ovanes knew Galust had the painting, Ovanes reported to law enforcement that the painting was stolen.

On June 19, 2017, after learning that Ovanes had reported "The Approaching Storm" stolen, Galust asserts that he called Ovanes and told him that he would return the painting to

---

[1] Ovanes' ex-wife, Socorro Berberian, is the legal owner of the property, but shared the property with Ovanes; she attested that she permitted him to use the property as though he were also the owner.

[2] After Ovanes reported the alleged theft on May 9, 2017, he had additional security cameras positioned around the house and storage shed. Although Ovanes submitted the security camera footage from June 19 as an exhibit to his motion for summary judgment, the security footage was not included in the clerk's record on appeal.

[3] The description of this visit is bizarre. Galust and Julia arrived at Ovanes' residence each carrying a two-foot red, wooden cross. These wooden crosses were also mentioned in the probable cause affidavit for Julia, when she was asked several times by the police to drop the cross, eventually complying. At one point, she even raised the cross above her head.

[4] It appears from the record that, prior to this dispute, the two brothers often helped each other with the other's paintings.

Ovanes' house. Additionally, Galust alleges that Ovanes had given him permission to pick up the water pump and additional paintings. Galust and Julia also claim that Galust owns the trailer in question.[5] After Galust and Julia entered Ovanes' property, their account of what happened largely matches what Ovanes stated happened. Galust and Julia acknowledge that Ovanes called the police; however, they contend Ovanes falsely accused the two of trespassing and theft. While Galust and Julia were "visiting and conversing with" Ovanes, Jefferson County Sheriff's deputies arrived and arrested Galust and Julia.[6]

Following the arrests of Galust and Julia, the Jefferson County Sheriff's Office executed a search warrant at Galust's residence on June 22, 2017. During the execution of the search warrant, the Sheriff's deputies seized a flatbed trailer and a water pump. They also seized Galust's cell phone and laptop.

Independent of the events giving rise to the allegations of theft, Galust and Julia also allege that Ovanes previously hired the two to perform "extensive construction and landscaping work" and to make improvements to the property where Ovanes lived. Ovanes' ex-wife, Socorro, actually owned the property; however, she let Ovanes use it. Galust and Julia assert that they performed the work, planting numerous shrubs, trees, and flowers, and made other major improvements to the land. The two also maintain they built a large storage building at Ovanes' request. According to Galust and Julia, Ovanes refused to pay them for the work they performed on the property.

Finally, Galust alleges that Ovanes stole a painting from *him*, this one titled, "Moonlight in Yalta." Ovanes denies stealing the painting. Rather, Ovanes argues that he was working on the painting at Galust's request.

Galust and Julia filed a lawsuit against Ovanes and Socorro[7] for various causes of action including: (1) malicious prosecution; (2) defamation; (3) invasion of privacy; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (7) breach of

---

[5] The ownership of the trailer remains disputed. For example, in response to Galust's claim that he owned the trailer, Ovanes stated that he learned that Galust had taken the title certificate to the trailer and presented it to the Department of Motor Vehicles and succeeded in transferring title into his own name. However, notes from the Jefferson County Sheriff's Office suggest there is no evidence that Galust had title transferred to himself. Further, Ovanes had the certificate of origin for the trailer, which only had Ovanes' name on it. Accordingly, ownership of the trailer is disputed.

[6] There were two undated probable cause affidavits in this case. However, they are only minimally relevant because they do not focus on what Ovanes knew at the time he made the allegations leading to the charges being filed.

[7] Socorro was included as a defendant for two reasons. First, Galust and Julia claim that she is liable on the tort claims "by reason of her marriage to Ovanes." Second, Galust and Julia claim that she is liable for the contract claims as the owner of the property on which the work was performed and from which she benefitted.

contract, fraud, unjust enrichment, and quantum meruit. Galust also sued Ovanes for conversion for the purported theft of one of his paintings. Ovanes filed a counterclaim against Galust for conversion, alleging that Galust had stolen over twenty-one paintings and frames.

Ovanes and Socorro moved for summary judgment on all of Galust's and Julia's claims. On February 8, 2019, the district court entered its decision and order regarding Ovanes' and Socorro's motion for summary judgment. The district court considered Galust's and Julia's claims as falling into three broad categories: (1) claims based on the false police reports; (2) claims for landscaping and construction work performed on Socorro's property; and (3) a conversion claim based on an allegation that Ovanes stole one of Galust's paintings. The police reports gave rise to claims of malicious prosecution, invasion of privacy, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. The landscaping and construction work gave rise to claims of breach of contract, fraud, unjust enrichment, and quantum meruit.

As for the malicious prosecution claims, the district court granted summary judgment because there was no genuine issue of material fact regarding whether probable cause existed for Galust's and Julia's arrests. The district court concluded that "the prosecutor applied for and received a search warrant based on the information that he possessed, which would have required a showing of probable cause." Further, the district court concluded that the judicial privilege doctrine barred the claims for defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and invasion of privacy.

Additionally, the district court granted summary judgment on the contract claims because it found that those claims were barred by the applicable statute of limitations. The district court concluded that because Galust and Julia had failed to provide any dates for the work allegedly performed, or any proof that they had performed any work at all, there was no genuine issue of material fact that the statute of limitations had run on those claims.

Finally, the district court denied summary judgment on Galust's conversion claim. The district court concluded that because (1) Galust alleged that Ovanes stole a painting from him, and (2) "Ovanes has admitted that he has [the painting], but merely claims that Galust gave him permission to work on it," there was a genuine issue of material fact regarding how Ovanes came into possession of the painting. The district court's denial of summary judgment on Galust's conversion claim has not been appealed.

Following the district court's order granting partial summary judgment, the only claims remaining were Galust's claim of conversion and Ovanes' counterclaim of conversion. Galust and Julia moved the district court to certify its summary judgment decision for appeal pursuant to I.R.C.P. 54(b). The district court granted the motion and certified the summary judgment decision for appeal. Following the certification, Galust and Julia timely appealed.

## II. STANDARD OF REVIEW

"On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Nelson v. Kaufman*, 166 Idaho 270, 274, 458 P.3d 139, 143 (2020) (quoting *Samples v. Hanson*, 161 Idaho 179, 181–82, 384 P.3d 943, 945–46 (2016)). "Summary judgment is proper 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quotation omitted); *see also* I.R.C.P. 56(a). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Nelson*, 166 Idaho at 274, 458 P.3d at 143 (quoting *Lapham v. Stewart*, 137 Idaho 582, 585, 51 P.3d 396, 399 (2002)).

"The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment." *Finholt v. Cresto*, 143 Idaho 894, 896, 155 P.3d 695, 697 (2007) (citing *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994)).

> If the moving party has demonstrated the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact that will preclude summary judgment. The nonmoving party must present evidence contradicting that submitted by the movant, and which demonstrates a question of material fact. However, a mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.

*Eagle Springs Homeowners Ass'n, Inc. v. Rodina*, 165 Idaho 862, 868, 454 P.3d 504, 510 (2019) (quotation omitted). Likewise, "[a] party may not rely on his pleadings nor merely assert that there are some facts which might or will support his legal theory, but rather he must establish the existence of those facts by deposition, affidavit, or otherwise." *Fischer v. Croston*, 163 Idaho 331, 339, 413 P.3d 731, 739 (2018) (quotation omitted). "Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Nelson*, 166 Idaho at 274, 458 P.3d at 143 (quoting

*Hoffman v. Bd. of the Local Improvement Dist. No. 1101*, 163 Idaho 464, 468, 415 P.3d 332, 336 (2017)).

### III. ANALYSIS

**A. The district court erred in granting summary judgment on Galust's and Julia's malicious prosecution claims because there is a genuine issue of material fact regarding whether probable cause existed.**

Galust and Julia asserted claims of malicious prosecution, alleging that Ovanes made a false police report that caused the two to be arrested. Ovanes and Socorro moved for summary judgment contending that because the county prosecutor had obtained a search warrant, probable cause existed and therefore a malicious prosecution claim could not proceed.[8]

To recover under a malicious prosecution claim, a plaintiff must prove "(1) [t]hat there was a prosecution; (2) [t]hat it terminated in favor of the plaintiff; (3) [t]hat the defendant was the prosecutor; (4) [m]alice; (5) [l]ack of probable cause; and (6) [d]amages sustained by the plaintiff." *Taylor v. McNichols*, 149 Idaho 826, 843, 243 P.3d 642, 659 (2010) (italics removed) (quoting *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d 126, 127 (1988)). "To sustain an action for malicious prosecution, there must be a concurrence of malice and want of probable cause. Neither, however clearly established, will support an action in the absence of the other."[9] *Clark v. Alloway*, 67 Idaho 32, 37, 170 P.2d 425, 428 (1946) (quotation omitted).

Accordingly, the district court focused on whether Galust's and Julia's arrests were justified by probable cause. The district court inferred that probable cause existed in this case because the prosecutor obtained a search warrant, which required a disinterested magistrate to find probable cause. As a result, the district court granted summary judgment on the malicious prosecution claims.

The crux of this issue on appeal is whether there is a genuine issue of material fact regarding the existence of probable cause. In an action for malicious prosecution, the trial court determines whether the defendant had probable cause for his actions. *Badell*, 115 Idaho at 103,

---

[8] Generally speaking, when a disinterested magistrate determines probable cause exists, an action for malicious prosecution may not be pursued. *Herrold v. Idaho State Sch. for the Deaf & Blind*, 112 Idaho 410, 412, 732 P.2d 379, 381 (Ct. App. 1987).

[9] "This is true even though the defendant is found to have been actuated by malice and for an improper purpose, since it is deemed good citizenry to cause the prosecution of those who are reasonably suspected of a crime." *Howard v. Felton*, 85 Idaho 286, 290, 379 P.2d 414, 416 (1963). "Courts reason that a defendant's personal motive should not render him personally liable for the performance of a public obligation. The existence of malice does not create even an inference that probable cause was lacking." *Id.* at 290–91, 379 P.2d 416 (quotations omitted).

765 P.2d at 128 (citing Restatement (Second) of Torts § 681B(1)(c) (1977)); *see also* Restatement (Second) of Torts § 673. "The jury's role is limited to adjudicating the facts necessary to enable the court to determine the existence, or lack, of probable cause." *Badell*, 115 Idaho at 103, 765 P.2d at 128 (citation omitted); *see also* Restatement (Second) of Torts § 673.

"[P]robable cause consists of a belief in the charge or facts alleged, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence in the same situation." *Clark*, 67 Idaho at 37, 170 P.2d at 428 (citation omitted). The Restatement (Second) of Torts, which this Court cited with approval in *Badell*, provides that probable cause to initiate a criminal proceeding exists if the defendant reasonably believes:

> (a) that the person whom he accuses has acted or failed to act in a particular manner, and
>
> (b) that those acts or omissions constitute the offense that he charges against the accused, and
>
> (c) that he is sufficiently informed as to the law and the facts to justify him in initiating or continuing the prosecution.

Restatement (Second) of Torts § 662; *see Badell*, 115 Idaho at 103, 765 P.2d at 128. "The question of probable cause is to be determined in the light of those facts that the accuser knows or reasonably believes to exist at the time when he acts." *Badell*, 115 Idaho at 103, 765 P.2d at 128 (quoting Restatement (Second) of Torts § 675 cmt. c).

Although the probable cause analysis generally focuses on what the defendant knew at the time of his actions, an "independent finding of probable cause by a magistrate preclude[s] as a matter of law a finding that there was no probable cause to arrest the plaintiff in a malicious prosecution action where there [has] been a full disclosure to the magistrate." *Herrold*, 112 Idaho at 412, 732 P.2d at 381 (alterations in original) (quotation omitted).

Here, there is a genuine issue of material fact as to whether Ovanes had probable cause to initiate the prosecutions. The district court relied on the fact that a search warrant had been procured. Because search warrants require a finding of probable cause, *see* I.C.R. 41(c)(1), the district court inferred that probable cause existed. However, the search warrant is not in the record, nor was it ever presented to the district court. Additionally, no probable cause affidavit in relation to the search warrant was included in the record. Consequently, it is not possible to determine whether "full disclosure to the magistrate" occurred. Finally, the record is devoid of any actual independent finding of probable cause. Instead, the district court *inferred* an independent judicial

finding of probable cause based on a certain action undertaken by law enforcement. However, at summary judgment, all inferences are to be drawn in favor of the non-moving party. *Nelson*, 166 Idaho at 274, 458 P.3d at 143 (quotation omitted). Therefore, the district court erred in drawing an inference of probable cause against Galust and Julia, the non-moving parties. In conclusion, we vacate the district court's order granting summary judgment on Galust's and Julia's claims of malicious prosecution and remand for further proceedings on this issue.

**B.     The district court erred in granting summary judgment on the defamation claims because Ovanes' statements to law enforcement are only entitled to a qualified privilege, not an absolute privilege.**

Galust and Julia allege in their complaint that Ovanes slandered them by making false statements to law enforcement that the two had stolen from him. The district court concluded that Ovanes' statements to law enforcement were protected by judicial privilege, barring Galust and Julia from maintaining their claim of defamation.

On appeal, Galust and Julia argue that, while Idaho has recognized certain statements are protected by judicial privilege, no case law in Idaho supports the proposition that statements to law enforcement fall within the scope of judicial privilege. Ovanes and Socorro respond, arguing that Ovanes' statements were protected "by the absolute privilege afforded to statements made in the course of a judicial proceeding."

"In a defamation action, a plaintiff must prove that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication."[10] *Elliott v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (2016) (quoting *Clark v. Spokesman-Review*, 144 Idaho 427, 430, 163 P.3d 216, 219 (2007)).

Ovanes concedes that he made statements to law enforcement, and that a genuine issue of material fact existed as to whether that statement was defamatory. However, he argues that his communications to law enforcement are protected by an absolute judicial privilege.

Idaho has long recognized that defamatory statements made in the course of a judicial proceeding are absolutely privileged, even if made with malicious intent or knowledge of their falsity. *Richeson v. Kessler*, 73 Idaho 548, 551, 255 P.2d 707, 709 (1953); *Malmin v. Engler*, 124

---

[10] There is an additional element to a defamation claim—actual malice—if the plaintiff is a public figure. *See Elliott*, 161 Idaho at 287, 385 P.3d at 465 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)). It appears that the parties assumed that the plaintiff was a private plaintiff and therefore malice was not an element of a defamation claim.

9

Idaho 733, 737, 864 P.2d 179, 183 (Ct. App. 1993). The purpose of the judicial privilege is "to keep the paths leading to the ascertainment of truth as free and unobstructed as possible." 50 Am. Jur. 2d *Libel and Slander* § 280 (2020) (citation omitted).

However, this Court has never decided whether the absolute privilege for defamatory statements extends to those made to law enforcement *prior* to the initiation of criminal proceedings. The scope of this absolute privilege was outlined in this Court's opinion in *Richeson*, 73 Idaho at 551, 255 P.2d at 709. This Court clarified:

> The term judicial proceeding is not restricted to trials, but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi[-]judicial power[.] . . . With certain exceptions, unimportant here, defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged[.]

*Id.* at 551–52, 255 P.2d at 709 (citing 53 C.J.S. *Libel and Slander* § 104). In *Malmin*, the Idaho Court of Appeals extended this privilege to defamatory statements made by attorneys as "statements made *preliminary to a proposed* judicial proceeding." *Malmin*, 124 Idaho at 737, 864 P.2d at 183 (italics in original). Based on this case law, Idaho appears to offer some protection to statements made prior to the initiation of judicial proceedings; however, this Court has never determined how far the privilege extends.

There is a jurisdictional split regarding the extent of the privilege that is afforded statements made to law enforcement officials. Some states have decided that statements to law enforcement officials are absolutely privileged, while others have concluded that such statements have only a qualified privilege. It is important to understand the practical difference between these two privileges. If the statements are protected by an absolute privilege, the statements may not be used to bring an action for defamation, even if the statements are made maliciously and with knowledge that the statements are false. *Richeson*, 73 Idaho at 552, 255 P.2d at 709 (citations omitted). In contrast, a qualified privilege, as the name suggests, is something less than absolute. Generally, the privilege may be "lost where it is abused as, for example, where the statements are not made in good faith." *Gardner v. Hollifield*, 96 Idaho 609, 614, 533 P.2d 730, 735 (1975) (quotation omitted).

A majority of states have held that such statements to law enforcement officials enjoy only a qualified privilege, rather than an absolute privilege. *See, e.g.*, *Gallo v. Barile*, 935 A.2d 103, 111–12 (Conn. 2007); *Fridovich v. Fridovich*, 598 So. 2d 65, 67 (Fla. 1992) (surveying case law of various jurisdictions); *Williams v. Tharp*, 914 N.E.2d 756, 763 (Ind. 2009); *Caldor, Inc. v.*

10

*Bowden*, 625 A.2d 959, 969 (Md. App. 1993); *DeLong v. Yu Enters., Inc.*, 47 P.3d 8, 12 (Or. 2002) (en banc).

On the other hand, a minority of states have found statements made to law enforcement prior to the lodging of a criminal complaint are absolutely privileged. *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1125–27 (6th Cir. 1990) (construing Kentucky law); *Borg v. Boas*, 231 F.2d 788, 794 (9th Cir. 1956) (construing Idaho law); *Ledvani v. Cerasani*, 146 P.3d 70, 75 (Ariz. Ct. App. 2006); *Hagberg v. Cal. Fed. Bank*, 81 P.3d 244, 249 (Cal. 2004); *Starnes v. Int'l Harvester*, 539 N.E.2d 1372, 1374–75 (Ill. Ct. App. 1989), *abrogated on other grounds by Bryson v. News Am. Publ'ns., Inc.*, 672 N.E.2d 1207, 1222 (Ill. 1996).

There are two important and competing interests considered by the courts that have addressed this issue. On one side, the persons against whom allegations have been levied have an interest in protecting their reputation from defamation and being wrongly accused of criminal conduct. *Fridovich*, 598 So. 2d at 69. On the other, there is a competing interest of "encouraging the free and unhindered communications to law enforcement authorities necessary to facilitate the investigation and prosecution of crimes." *Ledvina*, 146 P.3d at 74.

In those jurisdictions that recognize only a qualified privilege for communications with law enforcement, the courts generally recognize that a qualified privilege strikes the proper balance between providing protection to those "wishing to report events concerning crime[,]" with "the countervailing harm caused by potentially disastrous consequences that may befall the victim of a false accusation of criminal wrongdoing[.]" *Gallo*, 935 A.2d at 111.

We are persuaded by the rationale regarding the majority rule. We agree with the Supreme Court of Florida that a "qualified privilege 'is sufficiently protective of [those] wishing to report events concerning crime and balances society's interest in detecting and prosecuting crime with a defendant's interest not to be falsely accused.'" *Fridovich*, 598 So. 2d at 69 (alteration in original) (quotation omitted). The Florida Supreme Court went on to write,

> [t]here is no benefit to society or the administration of justice in protecting those who make intentionally false and malicious defamatory statements to the police. The countervailing harm caused by the malicious destruction of another's reputation by false accusation can have irreparable consequences. We believe the law should provide a remedy in situations such as this.

*Id.* (footnote omitted).

Given the potentially devastating consequences that may befall the victim of false accusations of criminal wrongdoing, we are unwilling to afford absolute immunity to such

statements. We are unconvinced that the safeguards currently in place to deter those who would make a false statement to law enforcement are sufficient. While it is true that most states, including Idaho, have statutes making it a crime to make false allegations to a law enforcement officer, *see, e.g.*, I.C. §§ 18-705, 18-5413, or allowing a civil claim for malicious prosecution or abuse of process, it is unlikely that these safeguards offer sufficient consolation to someone wrongfully and maliciously accused of criminal wrongdoing. Accordingly, we hold that defamatory statements made by private individuals to law enforcement officials prior to the institution of criminal charges are entitled to a qualified privilege, not an absolute privilege, and this qualified privilege will not apply when the defamatory statements are made with malice. *Gardner*, 96 Idaho at 614, 533 P.2d at 735. Given the strained relationship between the brothers, there is a genuine issue of material fact whether Ovanes' statements were made maliciously. Consequently, we reverse the grant of summary judgment on the defamation claims.

## C. Statements made to law enforcement with the purpose of initiating criminal proceedings are entitled to a qualified privilege for all torts except malicious prosecution.

Further, we hold that this qualified privilege applies to all tort claims, except for malicious prosecution. The reason to extend the privilege beyond defamation claims is that without its expansion, the privilege becomes almost meaningless. Without expanding the qualified privilege, a plaintiff could artfully categorize his claims as anything other than defamation and have those claims proceed, regardless of the fact that the claims are based on the same allegedly defamatory statements. Other jurisdictions have held similarly.[11]

---

[11] *Christonson v. United States*, 415 F. Supp. 2d 1186, 1195 (D. Idaho 2006) ("This privilege is not limited to defamation claims; rather, it extends 'to all claims arising from the same statements.'"); *Petyan v. Ellis*, 510 A.2d 1337, 1343 (Conn. 1986) ("Since the defendant had an absolute privilege to state her reasons for the termination of the defendant's employment in the 'fact-finding supplement' solicited by the employment security division, she was exercising a legal right in a permissible fashion and cannot be held liable for the intentional infliction of emotional distress."); *Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992) ("Application of the absolute privilege solely to the defamation count, accordingly, would be an empty gesture indeed, if, because of artful pleading, the plaintiff could still be forced to defend itself against the same conduct regarded as defamatory."); *Johnson v. Johnson & Bell, Ltd.*, 7 N.E.3d 52, 56 (Ill. App. Ct. 2014) (alteration in original) (quotations omitted) ("[T]he absolute privilege would be meaningless if a simple recasting of the cause of action . . . could void its effect."); *Franson v. Radich*, 735 P.2d 632, 635 (Or. Ct. App. 1987) (quotations omitted) ("Because the privilege 'is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients,' we see no reason why it should not also apply in claims for intentional infliction of emotional distress based on actions taken and statements made in connection with a judicial proceeding."); *5-State Helicopters, Inc. v. Cox*, 146 S.W.3d 254, 256 (Tex. App. 2004) ("An absolutely privileged communication is one for which, due to the occasion upon which it was made, no civil remedy exists[.]"); *Bennett v. Jones, Waldo, Holbrook & McDonough*, 70 P.3d 17, 32 (Utah 2003) ("[T]he judicial proceeding privilege extends not only to defamation claims but to all claims arising from the same statements[.]").

Malicious prosecution actions are an exception to the general rule that statements made to law enforcement with the purpose of initiating criminal proceedings are entitled to a qualified privilege. An action for malicious prosecution is permitted because "[t]he policy of encouraging free access to the courts . . . is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." *See Silberg v. Anderson*, 786 P.2d 365, 371 (Cal. 1990).

As a result, the district court erred in concluding that Galust's and Julia's remaining tort claims were barred by an absolute judicial privilege. Instead, Ovanes' statements are only entitled to a qualified privilege. As explained above, there is a genuine issue of material fact as to whether Ovanes' statements were made with malice. Therefore, each cause of action will be discussed individually to determine whether a genuine issue of material fact exists to survive summary judgment.

**D.** **There is no genuine issue of material fact regarding Galust's and Julia's claims of invasion of privacy.**

In their complaint, Galust and Julia allege that they are entitled to damages under their claims of "invasion of privacy." The claims are largely based on the fact that Ovanes purportedly made false allegations of theft against Galust and Julia to law enforcement, leading to the search of Galust's and Julia's residence. The district court granted summary judgment on the invasion of privacy claims due to judicial privilege. However, as noted above, the statement is only protected by a qualified privilege. Accordingly, we must determine whether there is a genuine issue of material fact regarding the invasion of privacy claims.

"This Court has recognized an action for invasion of privacy." *Hoskins v. Howard*, 132 Idaho 311, 316, 971 P.2d 1135, 1140 (1998) (citations omitted). Generally, there are four categories of invasion of privacy: "[1] Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs. [2] Public disclosure of embarrassing private facts about the plaintiff. [3] Publicity which places the plaintiff in a false light in the public eye. [4] Appropriation, for the defendant's advantage, of the plaintiff's name and likeness." *Id.* (quotation omitted).

It is unclear from Galust's and Julia's complaint what category of invasion of privacy they are alleging, nor did they take the opportunity to clarify the category in their briefing on appeal. Preliminarily, the fourth category, appropriation, is clearly not applicable on these facts. However, the other three categories are possible theories of liability for this case.

13

1. <u>There is no genuine issue of material fact regarding whether Ovanes intruded on Galust's and Julia's solitude.</u>

First, the invasion of privacy claims may be based on the fact that the search warrant was executed on Galust's and Julia's residence, intruding upon their solitude. "Liability for a claim of invasion of privacy by intrusion requires: (1) an intentional intrusion *by the defendant*; (2) into a matter, which the plaintiff has a right to keep private; (3) by the use of a method, which is objectionable to the reasonable person." *Jensen v. State*, 139 Idaho 57, 62, 72 P.3d 897, 902 (2003) (italics added) (citations omitted).

In this case, nothing alleged by Galust and Julia claim that *Ovanes* intruded into any private matter. Ovanes did not take part in the search of Galust's and Julia's residence, telephones, or computers. Therefore, he did not personally intrude into their private affairs. While it is true that Ovanes' allegations led to the execution of the search warrant, there is no Idaho authority which imputes any liability for those acts to Ovanes. There is therefore no genuine issue of material fact regarding whether there was an intrusion on Galust's and Julia's solitude by Ovanes. Consequently, summary judgment was appropriate on this theory.

2. <u>There is no genuine issue of material fact regarding whether Ovanes made a public disclosure of embarrassing facts.</u>

The allegations Ovanes made to law enforcement might give rise to a claim for "public disclosure of embarrassing private facts about the plaintiff." *Hoskins*, 132 Idaho at 317, 971 P.2d at 1141. In order to have an actionable claim for public disclosure of private facts, the plaintiff must prove the following three elements: (1) public disclosure, (2) the facts must be entitled to privacy, and (3) the public disclosure must be "offensive and objectionable to a reasonable person." *Id.* at 317, 971 P.2d at 1141 (citation omitted).

This Court has held that "a public disclosure did not occur when the record indicated that only a limited number of persons received the private information and those persons had a right to know the information." *Nation v. State, Dep't of Correction*, 144 Idaho 177, 188, 158 P.3d 953, 964 (2007) (citing *Baker v. Burlington N., Inc.*, 99 Idaho 688, 691, 587 P.2d 829, 832 (1978)). Here, the statement to a law enforcement officer is not a "public disclosure." The record is unclear as to the exact number of sheriff's deputies to whom Ovanes made a statement, but as noted in *Nation*, a public disclosure does not occur when a limited number of persons received the information. Likewise, disclosure of information to law enforcement would, by its nature, be private as opposed to public. Accordingly, there is no genuine issue of material fact regarding

14

whether there was a public disclosure. As a result, summary judgment was appropriate on this theory.

3. <u>There is no genuine issue of material fact regarding whether Ovanes made a public statement casting Galust and Julia in a false light.</u>

Finally, the allegations Ovanes made to law enforcement might give rise to a claim for invasion of privacy by casting "false light" on a person. In order to prove a "false light" claim, the plaintiff must prove (1) disclosure to the public by the defendant; (2) the disclosure is a falsehood concerning the plaintiff; and (3) the disclosure was the proximate cause of damages. *Uranga v. Federated Publ'ns, Inc.*, 138 Idaho 550, 553, 67 P.3d 29, 32 (2003). As noted above, it is undisputed that there was no public disclosure. As a result, summary judgment was appropriate on this theory. Having concluded that none of the alternative ways to establish invasion of privacy is available to Galust or Julia, summary judgment on this cause of action was appropriately granted.

**E.** **There is a genuine issue of material fact regarding Galust's and Julia's claims of intentional infliction of emotional distress.**

The complaint also alleges claims for intentional infliction of emotional distress based on the purportedly false allegations made by Ovanes to law enforcement officials against Galust and Julia. The alleged emotional distress is related to the fact that Galust and Julia were arrested and jailed as a result of the allegations.

> In order to establish a claim of intentional infliction of emotional distress, the plaintiff must prove that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress was severe.

*James v. City of Boise*, 160 Idaho 466, 484, 376 P.3d 33, 51 (2016) (citing *Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 179, 75 P.3d 733, 740 (2003)).

Below, the district court relied entirely on an absolute privilege to dispense with Galust's and Julia's intentional infliction of emotional distress claims, and did not analyze the merits of their claims. On appeal, Ovanes has continued to argue that an absolute privilege precludes the emotional distress claims, but alternatively argues that his conduct was not "extreme and outrageous" which would be required to state a cause of action. Because we have concluded that Ovanes is not entitled to an absolute privilege under these circumstances, the district court erred in granting summary judgment on the claims of Galust and Julia for intentional infliction of emotional distress. However, Ovanes urges us to affirm on the basis that the allegations against

15

him do not rise to the level of "extreme and outrageous" behavior sufficient for the cause of action to continue. Accordingly, we turn to this issue. *See Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 446, 235 P.3d 387, 396 (2010) (citation omitted) (alteration in original) ("This [C]ourt must uphold the finding and judgment of the trial court if it is capable of being upheld on any theory.").

"Courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress." *Edmondson*, 139 Idaho at 180, 75 P.3d at 741.

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

*Id.* (quoting Restatement (Second) of Torts § 46 cmt. h (1965)). "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Id.* (citations omitted).

> Examples of conduct that has been deemed sufficiently extreme and outrageous by Idaho courts include: an insurance company speciously denying a grieving widower's cancer insurance claim while simultaneously impugning his character and drawing him into a prolonged dispute, *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 219–20, 923 P.2d 456, 464–65 (1996), prolonged sexual, mental, and physical abuse inflicted upon a woman by her co-habiting boyfriend, [*Curtis v. Firth*, 123 Idaho 598, 606–07, 850 P.2d 749, 757–58 (1993)], recklessly shooting and killing someone else's donkey that was both a pet and a pack animal, *Gill v. Brown*, 107 Idaho 1137, 1138–39, 695 P.2d 1276, 1277–78 (Ct. App. 1985), and real estate developers swindling a family out of property that was the subject of their lifelong dream to build a Christian retreat. [*Spence v. Howell*, 126 Idaho 63, 773–74, 890 P.2d 714, 724–25 1995).]

*Johnson v. McPhee*, 147 Idaho 455, 464, 210 P.3d 563, 572 (Ct. App. 2009). In *Johnson*, the Court of Appeals held that verbal abuse consisting of multiple instances where defendant verbally abused the plaintiff in profanity-laced tirades was insufficient to constitute extreme and outrageous conduct. *Id.* The Court of Appeals held that "[w]hile [the defendant's] alleged conduct . . . if true, was mean-spirited and crude, it does not rise to the level of extreme and outrageous conduct required to kindle this cause of action." *Id.* at 465, 210 P.3d at 573.

Obviously, making false allegations of criminal behavior against someone is egregious behavior. As noted, it would also be unlawful. *See* I.C. § 18-5413. It is significantly more

16

outrageous than subjecting someone to a profanity-laced tirade, which is not actionable. *See Johnson*, 147 Idaho at 465, 210 P.3d at 573. We have also noted the potentially devastating consequences of a false criminal allegation. Taking these factors into consideration and drawing all inferences in favor of Galust and Julia, we hold that there is a genuine issue of material fact as to whether Ovanes' purported actions rise to the level of extreme and outrageous conduct. If Ovanes had no reason to suspect that Galust and Julia had stolen from him, a reasonable jury could find that making numerous, unsubstantiated allegations of criminal wrongdoing to the authorities could qualify as extreme and outrageous conduct. Consequently, summary judgment regarding the intentional infliction of emotional distress claims is reversed.

**F. There is no genuine issue of material fact regarding Galust's and Julia's claims of negligent infliction of emotional distress.**

Galust and Julia's complaint alleges claims of negligent infliction of emotional distress based on the same facts as the intentional infliction of emotional distress claims. "The elements of negligent infliction of emotional distress are (1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage." *Frogley v. Meridian Joint Sch. Dist. No. 2*, 155 Idaho 558, 569, 314 P.3d 613, 624 (2013) (citations omitted). "Additionally, there must be a physical manifestation of the plaintiff's emotional injury, which is designed to provide a degree of genuineness that claims of mental harm are not imagined." *Id.* (citing *Czaplicki v. Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989)).

While there may be a genuine issue of material fact regarding the four elements of negligent infliction of emotional distress, there are no facts in the record regarding a physical manifestation of emotional distress. Ovanes and Socorro moved for summary judgment on the basis that Galust and Julia could not prove a prima facie case of negligent infliction of emotional distress. Once Ovanes and Socorro satisfied their burden that there was a lack of a genuine issue of material fact regarding the cause of action, the burden shifted to Galust and Julia to identify facts in the record to support their claims. *See Eagle Springs Homeowners Ass'n, Inc.*, 165 Idaho at 868, 454 P.3d at 510. Their briefing on the matter only focused on Ovanes' conduct. Consequently, the pleadings and argument failed to establish a claim against Socorro. Moreover, there is not a scintilla of evidence to suggest either Galust or Julia suffered any physical manifestations from their alleged emotional injuries. The two failed to point to facts in the record that created a genuine issue of

material fact regarding the negligent infliction of emotional distress claims. Accordingly, we affirm the grant of summary judgment on these claims.

**G. The district court's summary judgment in favor of Socorro on all tort claims is affirmed because she has no independent liability.**

In paragraphs 41 through 45 of their complaint, Galust and Julia allege that Socorro is liable for the allegedly wrongful conduct of Ovanes "by reason of her marriage to Ovanes." However, at no point during this action was Socorro legally married to Ovanes. Galust and Julia point to no other authority or reason that Socorro would be liable for any of the claims based on Ovanes' statements made to law enforcement. Accordingly, the district court's decision to grant Socorro summary judgment on all tort claims is affirmed.

**H. The district court did not err in concluding that the statute of limitations barred Galust's and Julia's contract claims.**

Galust and Julia asserted claims of breach of contract, fraud, unjust enrichment, and quantum meruit. These claims were based on allegations that Ovanes hired Galust and Julia to build a large storage building and provide landscaping for property owned by Socorro and used by Ovanes. Galust and Julia claim that they planted hundreds of trees and shrubs on the property and did other extensive landscaping, excavation, and improvement. Additionally, Galust and Julia allege that they were hired to build a large storage building on Ovanes' property, and did so. The two assert that Ovanes never paid them for their time and labor, despite owing them at least $300,000.

In their motion for summary judgment, Ovanes and Socorro argued that the statute of limitations for the oral contract had expired. According to Ovanes and Socorro, Galust and Julia "placed a shack on [Ovanes' and Socorro's] property, performed some landscaping, and drilled a well in May, 2010, and were ordered off their project by the end of Spring, 2010." Galust asserted in his declaration—submitted with his memorandum in opposition to summary judgment—that "Ovanes agreed to all of these services, agreed to compensation, and a meeting of our minds occurred on this work and thoughts occurred [sic] which were commenced within four years of the filing of the complaint herein." Ovanes and Socorro argued that Galust's statement (that the work was commenced within four years of filing the complaint) fails to materially contradict Ovanes' and Socorro's evidence that the work was concluded in the spring of 2010.

The district court granted summary judgment on the contract claims because it concluded that the statute of limitations had run on all of the claims. The district court noted,

Galust and Julia have offered no evidence of when the landscaping and construction work took place beyond a vague statement that "Ovanes agreed to all of these services, agreed to compensation, and a meeting of our minds occurred on this work and thoughts occurred [sic] which were commenced within four years of the filing of the compliant herein." . . . Galust and Julia claim to have purchased building material and to have removed plants and other materials from [Galust's] property and taken them to Ovanes' property. But they provide no proof of either their purchases or their work. Galust and Julia have not provided proof of their actual expenditures, but instead rely on the improved value of the property as proof of their damages. Galust and Julia also do not provide any dates that would show that the actions took place within the statute of limitations.

The statute of limitations for an oral contract is four years. I.C. § 5-217. This is also the statute of limitations for claims based on unjust enrichment or quantum meruit. I.C. § 5-224; *see also Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 388, 403, 111 P.3d 73, 88 (2005), *overruled on other grounds by Farber v. Idaho State Ins. Fund*, 152 Idaho 495, 272 P.3d 467 (2012). The determination of the applicable statute of limitations is a question of law over which this Court has free review. *Id.*

A cause of action for breach of contract accrues upon breach for limitation purposes. *Simons v. Simons*, 134 Idaho 824, 830, 11 P.3d 20, 26 (2000); *see also Cuevas v. Barraza*, 146 Idaho 511, 517, 198 P.3d 740, 746 (Ct. App. 2008). In this case, breach would have occurred after Galust and Julia had completed the requested work, and once Ovanes refused to pay what was due. As this Court does not have before it the material terms of the agreement, Idaho law dictates that payment would have been due within a reasonable time after the work was performed, taking into consideration all the surrounding circumstances. *Irvine v. Perry*, 78 Idaho 132, 143, 299 P.2d 97, 104 (1956) (quotation omitted).

The district court did not err in granting summary judgment to Ovanes and Socorro on the contract claims. The only evidence in the record of when work was performed was in 2010 when Galust placed a shack and began drilling a well on the property. After Ovanes provided this information, the burden shifted to Galust and Julia to point to evidence in the record which demonstrated a genuine issue of material fact. The only evidence that Galust and Julia point to is Galust's statement that "Ovanes agreed to all of these services, agreed to compensation, and a meeting of our minds occurred on this work and thoughts occurred [sic] which were commenced within four years of the filing of the complaint herein." Galust and Julia do not point to receipts showing dates upon which they purchased materials or point to any date to cast doubt on Ovanes' evidence. The statement provided by Galust is no more than an indefinite and conclusory

statement. "Statements that are conclusory or speculative do not satisfy either the requirement of admissibility or competency under" I.R.C.P. 56(c)(4). *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002) (citation omitted).

Therefore, there is no genuine issue of fact regarding whether the statute of limitations had run. The last known date of work performed was in the spring of 2010, well outside the four-year statute of limitations period. Consequently, the district court did not err in granting Ovanes and Socorro summary judgment on Galust's and Julia's contract claims.

Additionally, mixed into the contract claims is an allegation of fraud.[12] Essentially, it appears that Galust and Julia claim that they were defrauded out of their labor and materials for improvements made on the property. Here, the fraud claims are also barred by the statute of limitations. The statute of limitations for fraud is three years. I.C. § 5-218. As noted above, the only evidence in the record regarding the timing of the work performed was in the spring of 2010. This date is well outside the statute of limitations of three years. Galust and Julia do not point to anything in the record to create a genuine issue of material fact. Accordingly, summary judgment was appropriate on the fraud claims.

## I. No party is entitled to attorney fees on appeal.

Galust and Julia did not request attorney fees in their opening brief. Accordingly, they are not entitled to attorney fees on appeal. I.A.R. 41.

Ovanes and Socorro request attorney fees on appeal pursuant to Idaho Code section 12-121.

> However, this appeal arises from an I.R.C.P. 54(b) certified judgment which resolved some, but not all, of the parties' claims. Since each claim in an action must be resolved before a court may determine the prevailing party, the identity of the prevailing party in this case will not be known until proceedings at the trial level are complete.

*Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, 269, 297 P.3d 222, 232 (2012) (citing I.R.C.P. 54(d)(1); *Bagley v. Thomason*, 149 Idaho 799, 804–05, 241 P.3d 972, 977–78 (2010)).

Accordingly, it would be premature to award any attorney fees at this juncture. Upon the district court's entry of a final judgment deciding each claim below, the court is to determine which party has prevailed and whether that party is entitled to attorney fees related to this appeal.

---

[12] Although not addressed by the district court, the fraud claim was not pleaded with particularity as required in I.R.C.P. 9(b). Galust and Julia failed to plead the elements of fraud in the general sense, let alone with particularity.

## IV. CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment regarding the tort claims of invasion of privacy and negligent infliction of emotional distress, as well as the contract and fraud claims. However, we reverse the grant of summary judgment regarding the claims of malicious prosecution, intentional infliction of emotional distress, and defamation.

As Socorro has no liability on any of the remaining claims, including the conversion claims not appealed, Socorro's summary judgment is affirmed and on remand she should be dismissed from the case. As a prevailing party on appeal, Socorro is entitled to her costs.

Finally, no party is entitled to attorney fees on appeal.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.