# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49373

EAGLE ROCK TIMBER, INC., an Idaho corporation,

    Plaintiff-Appellant,

v.

TETON COUNTY, IDAHO, a political subdivision of the State of Idaho,

    Defendant-Respondent.

Boise, February 2023 Term

Opinion filed: June 13, 2023

Melanie Gagnepain, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Teton County. Stevan H. Thompson, District Judge.

The decisions of the district court are affirmed in part and reversed in part.

Holden, Kidwell, Hahn & Crapo, PLLC, Idaho Falls, for Appellant. D. Andrew Rawlings argued.

Hopkins Roden Crockett Hansen & Hoopes, PLLC, Idaho Falls, for Respondent. Steven Brown argued.

_____

MOELLER, Justice.

This appeal concerns a dispute over a public works contract involving 1.6 miles of road reconstruction in Teton County, Idaho. After submitting the winning bid, Eagle Rock Timber, Inc. ("Eagle Rock"), contracted with Teton County to reconstruct a stretch of road known as "Chapin Lane." During the course of the project, Eagle Rock claims it discovered unsuitable base material under portions of the road. Eagle Rock maintains that Teton County's agent, Darryl Johnson ("Johnson"), directed Eagle Rock to remove the material and said that the county would "make it right." However, when Eagle Rock attempted to recover an amount in excess of the original Contract Price, Teton County denied Eagle Rock's request, stating that it had not authorized any changes to the Contract. When the parties could not resolve this dispute over the amount owed, Eagle Rock brought suit.

1

Teton County moved twice for summary judgment. The district court denied the first motion, concluding that genuine issues of material fact existed concerning whether Johnson orally waived the writing requirement and whether Johnson had authorized Eagle Rock to remove the unsuitable base material, which could support an equitable remedy. However, when Teton County filed a subsequent motion for summary judgment, the district court granted it, ruling that since Teton County's agent did not have actual or apparent authority to bind Teton County, the claims asserted by Eagle Rock failed as a matter of law.

Eagle Rock appealed, asserting that the district court erred because there are still genuine issues of material fact that should be resolved by a jury. Additionally, Eagle Rock claims that the district court's refusal to grant leave to amend its complaint to assert a separate cause of action against Johnson personally was an abuse of discretion. Eagle Rock further argues that since Teton County should not have prevailed below, the district court's award of attorney fees should be vacated. For the reasons stated herein, we reverse the district court's grant of summary judgment and denial of leave to amend. Accordingly, we also vacate the award of attorney fees to Teton County. However, we affirm the district court in not considering the ratification issue because it was beyond the scope of the pleadings at the time it was presented.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In early 2018, Teton County opened bidding to licensed contractors on a public works road reconstruction project. The project entailed a 1.6-mile stretch of a county roadway near Victor, Idaho, called Chapin Lane. The plans for the project were designed by Jorgensen Associates, PC. Darryl Johnson, a licensed engineer previously employed by Jorgensen Associates, PC, from 2007 to 2014, played a role in preparing many of the design documents in advance of Teton County soliciting bids for the project. However, by the time bidding was opened, Darryl Johnson had been hired by Teton County as its Public Works Director and County Engineer. He played a key role in the bidding process.

After completing the bidding process, Eagle Rock's bid was selected and it entered into a contract with Teton County for the project. According to both parties at oral argument, Johnson prepared the Contract documents. Per the terms of the agreement, the full Contract included: an eight-page agreement; performance bond; payment bond; a document entitled "General Conditions – Divisions 100 of the Idaho Standards for Public Works Construction"; supplementary conditions, drawings, and specifications; addenda; the contractor's bid as an exhibit; and any subsequent

change orders or work change directives (these documents will be collectively referred to herein as the "Contract"). The Contract required that a project "Engineer" be designated to play a key role in specified functions of the Contract—including taking certain measurements, making recommendations, and holding authority to make certain minor changes as defined in the Contract. Jorgensen Associates was designated as the Engineer in the Contract.

During construction, Eagle Rock asserts it discovered unsuitable base material under portions of the road in such amounts as could not be fully ascertained until it was removed. However, Eagle Rock was able to determine that it would require the removal of more material than originally estimated in the Contract. The original bid submitted by Eagle Rock, and incorporated into the Contract, was based on a projection of only 200 cubic yards of unsuitable material excavation, which was priced at a removal rate of $112 per cubic yard. Eagle Rock claims the discovery of the unsuitable base material was reported to Johnson on at least two occasions. In both instances, Eagle Rock claims Johnson instructed Eagle Rock, or its subcontractors, to go ahead and remove the unsuitable material and that Teton County would "make it right." Teton County and Johnson deny that this ever occurred.

After removal of the unsuitable base material, Eagle Rock submitted a change order. This change order, which included a corresponding price increase of $111,440 for the material used to infill where the unsuitable base material had been removed, was approved by Teton County. Eagle Rock then filed an "application for payment" for the removal of the unsuitable base material at the unit price contemplated in the Contract. Due to the unanticipated amount of material that had to be removed, the additional costs of removal exceeded the Contract Price by $649,600. Teton County denied Eagle Rock's request, stating it had not authorized any changes in the Contract related to the removal of the unsuitable material. Teton County cited express provisions of the Contract that required any change in Contract Price or modification of the Contract to have prior written authorization approved by Teton County. Eagle Rock attempted to meet with Teton County and negotiate a unit price for the excess unsuitable base material, but Teton County maintained that Eagle Rock had been paid all it was due under the Contract. When the parties could not resolve this dispute over the amount owed, Eagle Rock brought suit.

Teton County moved for summary judgment twice. In the first motion, Teton County argued that Eagle Rock "did not adhere to the contractual requirements for securing a Change Order and no Change Order exist[ed]." Teton County asserted that since the Contract Price could

not be changed absent a change order, Eagle Rock's complaint should have been dismissed. The district court disagreed and denied the first motion due to the court's concerns that genuine issues of material fact existed regarding whether Johnson orally waived the writing requirement and whether he gave authorization to Eagle Rock for the removal, which could implicate an equitable remedy. However, as summarized by the district court, "[i]n the first summary judgment decision, the [district court] did not delve into the scope of Johnson's authority."

Less than two months after the district court issued its decision on the first motion, Teton County moved for summary judgment again. In the second motion for summary judgment, Teton County argued that Johnson had no authority to waive or modify any provisions in the Contract. Specifically, Teton County maintains that "the County Engineer and 'representative' in question, was not authorized to enter into, modify or amend public works contracts on behalf of the County, or to waive the terms thereof." Eagle Rock asserts that this was a different position than Teton County had initially taken in the case and, even if it was unclear, Teton County's argument raised the specter that Johnson was acting on his own. Accordingly, Eagle Rock timely moved to amend its complaint to name Johnson as a defendant and sought to bring independent claims against him personally.

The district court granted Teton County's second motion for summary judgment, concluding that because Johnson did not have actual or apparent authority to bind Teton County, Eagle Rock's claims against Teton County failed as a matter of law. However, the district court did not rule on Eagle Rock's pending motion to amend its complaint to seek relief against Johnson personally.

While the motion to amend was still under advisement, the district court entered a judgment of dismissal on August 30, 2021. Eagle Rock moved for reconsideration and, among other arguments, asserted that the district court could not enter judgment because it had "not ruled on Eagle Rock's *Motion to Amend*." On November 17, 2021, the district court denied the motion to reconsider. Thereafter, on November 30, 2021, the district court issued a written decision denying Eagle Rock's motion to amend. The district court determined that "Johnson did not have the required authority to alter the Contract after this motion was filed, but there has never been a change in Johnson's status as an agent generally." Further, the district court, citing *DAFCO LLC v. Stewart Title Guar, Co.*, 156 Idaho 749, 756, 331 P.3d 491, 498 (2014), concluded that "there was a fairly significant delay in bringing the amendment without a change in stance from the

4

County to justify it and prejudice to the parties as raised in the Opposition and at the hearing." For these reasons, the district court denied the motion to amend and issued a final judgment. Eagle Rock timely appealed.

## II. STANDARD OF REVIEW

This Court reviews a grant of summary judgment de novo and employs the same standard of review used by the trial court in ruling on the motion for summary judgment. *United Heritage Prop. & Cas. Co. v. Zech*, 170 Idaho 764, 770, 516 P.3d 1035, 1041 (2022) (quoting *AED, Inc. v. KDC Invest.,* LLC, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013)). Accordingly, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 494 P.3d 769, 776 (2021) (quoting I.R.C.P. 56(a)). "The moving party carries the burden of proving the absence of a genuine issue of material fact." *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 123, 206 P.3d 481, 487 (2009). "All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007).

When this Court reviews a discretionary decision of a lower court for an abuse of discretion, we must determine whether the court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III. ANALYSIS

### A. The district court erred because genuine issues of material fact preclude granting the second motion for summary judgment.

In ruling on the second motion for summary judgment, the district court concluded that the express language of the Contract established as a matter of law that Johnson did not have actual or apparent authority to bind Teton County. After considering the inconsistent manifestations of authority in (1) the terms of the Contract and (2) the behavior of the parties, we disagree.

In reviewing cases involving agency, this Court has often looked to the Restatement of Agency, both the Second and Third editions. *See Jones v. HealthSouth Treasure Valley Hosp.*, 147 Idaho 109, 113, 206 P.3d 473, 477 (2009) (reviewing the definition of apparent authority); *Nelson*

5

*v. Kaufman*, 166 Idaho 270, 280, 458 P.3d 139, 149 (2020) (applying the definition of apparent authority from the Restatement (Third) of Agency); *Clark v. Gneiting*, 95 Idaho 10, 13, 501 P.2d 278, 281 (1972) (authoritatively applying the Restatement (Second) of Agency).[1] In the context of actual authority, express or implied, the Restatement (Third) of Agency provides that "[a]n agent acts with *actual authority* when, at the time of taking action that has legal consequences for the principal, *the agent reasonably believes, in accordance with the principal's manifestations to the agent,* that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006) (emphasis added). Conversely, the Restatement also provides: "*Apparent authority* is the power held by an agent or other actor to affect a principal's legal relations with third parties when *a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestation*s." *Id.* at § 2.03 (emphasis added); *see also Nelson*, 166 Idaho at 280, 458 P.3d at 149 (applying the Restatement's definition of apparent authority). Thus, when evaluating actual authority, courts look to the reasonable belief of the agent; but when evaluating apparent authority, courts look to the reasonable belief of the third party.

As we have said, ultimately "[i]t is the conduct of the principal, and not the agent, that binds the principal." *Chamberlain v. Amalgamated Sugar Co.*, 42 Idaho 604, 247 P. 12, 14 (1926) (citing *Madill v. Spokane Cattle Loan Co.*, 39 Idaho, 754, 230 P. 45 (1924); 2 C. J. sec. 214, p. 574; and *Anderson v. Patten*, 157 Iowa, 23, 137 N. W. 1050 (1912)). "Agency is a relationship resulting from 'the *manifestation* of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *Herbst v. Bothof Dairies, Inc.*, 110 Idaho 971, 973, 719 P.2d 1231, 1233 (Ct. App. 1986) (emphasis added) (citing RESTATEMENT (SECOND) OF AGENCY § 1, at 7 (1958)). Importantly, "[a]gency relationships are limited in scope to the express, implied, and apparent authority *granted by the principal*. Only acts by the agent that are within the scope of the agency relationship affect the principal's legal liability." *Humphries v. Becker*, 159 Idaho 728, 735, 366 P.3d 1088, 1095 (2016) (emphasis added) (citing RESTATEMENT (THIRD) OF AGENCY § 1.01). Thus, just as the manifestations of the principal create the relationship, the principal's manifestations also define the scope of the authority granted to the agent.

---

[1] There is no legally relevant difference between the Second and Third Restatement of Agency as it pertains to the issues raised by the parties below and on appeal. *Compare* RESTATEMENT (SECOND) OF AGENCY (1958) *with* RESTATEMENT (THIRD) OF AGENCY (2006).

Nevertheless, the principal's manifestations that create and define the scope of an agency relationship are not evaluated in a vacuum—the manifestations are evaluated through *reasonable belief*. Importantly, "[a]n agent must interpret the principal's manifestations and determine how to act. The context in which the relationship is situated, including the nature of the principal's objectives and the custom generally followed in such circumstances, affects how the agent should interpret the principal's manifestations." RESTATEMENT (THIRD) OF AGENCY § 2.01, cmt c.

"This Court has previously viewed the question of whether an agency relationship exists as a question of fact for the jury to determine." *Forbush v. Sagecrest Multi Fam. Prop. Owners' Ass'n, Inc.*, 162 Idaho 317, 330, 396 P.3d 1199, 1212 (2017) (quoting *Humphries*, 159 Idaho at 735 n.2, 366 P.3d at 1095 n.2). However, we also explained that "[w]hether facts sufficient to constitute an agency relationship exist is indeed a question of fact for the jury, however, whether a given set of facts are sufficient to constitute an agency relationship is a question of law appropriate for this Court's consideration." *Id.* (quoting *Humphries*, 159 Idaho at 735 n.2, 366 P.3d at 1095 n.2).

In this case, Johnson's status as its agent is undisputed by Teton County. Instead, Teton County challenges the scope of Johnson's authority as its agent. However, the fact that the scope of the agent's authority is what is in dispute, rather than the existence of an agency relationship, makes this dispute no less a jury question. Determining the *existence* of an agency relationship involves the embedded question of determining the scope of the relationship: i.e., whether the relationship existed in regard to the disputed act. *See Bailey v. Ness*, 109 Idaho 495, 498, 708 P.2d 900, 903 (1985) ("[W]here the existence of an agency relationship is disputed—whether or not there is apparent authority on the agent's part to act as he acted—it is a question for the trier of fact to resolve from the evidence.") (citing *Clark v. Gneiting*, 95 Idaho 10, 12, 501 P.2d 278, 280 (1972); *John Scowcroft & Sons Co. v. Roselle,* 77 Idaho 142, 146, 289 P.2d 621, 623 (1955); and *Thornton v. Budge,* 74 Idaho 103, 108, 257 P.2d 238, 241 (1953)). Thus, under such circumstances, whether the facts are sufficient to conclude that an act was within the scope of the agency relationship is a question of fact for the jury.

Although the interpretation of a complex contract is at the heart of this appeal, that alone does not mean there are no questions of fact for the jury. We have said that "[t]he existence of an agency relationship is a question of fact, but where the question depends on the construction of a legal instrument, the question becomes one of law." *Am. W. Enterprises, Inc. v. CNH, LLC*, 155

7

Idaho 746, 753, 316 P.3d 662, 669 (2013) (citing *Idaho Lumber, Inc. v. Buck,* 109 Idaho 737, 741, 710 P.2d 647, 651 (1985) and *Adkison Corp. v. Am. Bldg. Co.,* 107 Idaho 406, 409, 690 P.2d 341, 344 (1984)). However, the question only becomes one of law, and ripe for summary judgment, when the question entirely depends on the construction of the agreement. When the contract itself is unclear, ambiguous, or its interpretation depends on disputed facts, the question becomes a question of fact for a jury to resolve. *See, e.g.*, *Christiansen v. Potlatch #1 Fin. Credit Union*, 169 Idaho 533, 540, 498 P.3d 713, 720 (2021) ("Summary judgment is appropriate if . . . 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' ").

Based on our de novo review, we conclude that in addition to conflicting contractual manifestations, there are also external manifestations (or representations) by Teton County which conflict with the Contract and give rise to genuine issues of material fact related to Johnson's authority. We will review these conflicting manifestations below.

*1. The unclear and contradictory Contract provisions provide genuine issues of material fact regarding Teton County's contractual manifestations of Johnson's authority as agent.*

While this case turns on a relatively straightforward question of agency law, the Contract at issue greatly complicates its resolution. The collection of incorporated documents making up the Contract is, at best, inartfully drafted.[2] In addition to inapplicable provisions, there are many inconsistencies throughout the collection of "Contract Documents" that make up the integrated contract—most notably the confusion of what role or roles Johnson was to play. This lack of clarity as to Johnson is significant. In its memorandum decision and order granting the second motion for summary judgment, the district court concluded that there were no genuine issues of material fact because the Contract's express provisions foreclosed any actual express authority, actual implied authority, or apparent authority of Johnson. However, we disagree that such a conclusion is supported by the record when it is unclear how the Contract applies to Johnson or defines his role.

For example, while the Contract is between Teton County, as Owner, and Eagle Rock, as Contractor, another key party listed in the Contract is the Engineer. Importantly, the Contract defines the Engineer as "[t]he individual *or entity named* as such in the Agreement." (Emphasis added). The Contract lists Jorgensen Associates, P.C., as Engineer—with the Engineer playing a

---

[2] To be clear, while some of the individual documents may be well drafted, it is the inconsistencies created by the combination of documents that renders the finished product problematic.

significant role in how the Contract operated. During the proceedings below and now on appeal, Teton County argues that the limitations of the Engineer's authority apply to Johnson. However, there is nothing in the record to indicate that the Contract was ever amended to name Johnson as Engineer.

At oral argument, counsel for Teton County simply argued: "The way I see it, under the terms of the Contract, [Johnson] was the Engineer." Eagle Rock seems to agree that Johnson was the Engineer[3] and points to Supplementary Condition 8.12 as the provision that designated Johnson as the Engineer.[4] We disagree. As we read this provision, Condition 8.12 did nothing to change the designated Engineer from Jorgensen Associates to Johnson, as required in Section 3.01 of the Agreement. Instead, Supplementary Condition 8.12 concerned another role in the Contract altogether—that of "Project Representative." However, the Supplementary Condition does little to clarify that role. The Supplementary Condition provides:

> SC-8.12 *Owner as Project Representative*
>
> > SC-8.12 Add new paragraph immediately following paragraph 8.11 of the General Conditions as follows:
> >
> > > A. Owner will furnish Project representation during the construction period. The duties, responsibilities and limitations of the authority specified for the Engineer in Article 9-ENGINEERS STATUS DURING CONSTRUCTION, and elsewhere in the Contract Documents will be those of the Owner.

(Emphasis in original). Putting aside the confounding title "Owner as Project Representative," it is unclear how Teton County was to provide notice of who the Project Representative was. There is nothing in the record to indicate that Teton County ever provided written notice that it designated Johnson as the Project Representative. Further, this provision directly contradicts Section 9.01 of the General Conditions,[5] which provides that the "*Engineer* will be Owner's representative during

---

[3] Eagle Rock asserts that because Johnson was the Engineer, he was imbued with extra authority to modify the Contract. However, this argument is premised on Johnson being the Engineer on the Contract. This cannot be. The Contract unambiguously names Jorgensen Associates as Engineer. It defines the Engineer as "the person or entity" named in the Contract. Further, the Contract requires any modification to be made in writing and signed by both parties. Since there is no written amendment modifying the Contract to change the Engineer from Jorgensen Associates to Johnson, on these facts Johnson cannot be the Engineer as designated and defined in the Contract. However, as discussed below, his Role as *County Engineer* does have significance to whether there was a genuine issue of material fact in this case.

[4] At oral argument, when this Court inquired of Teton County about the meaning of Supplementary Condition 8.12., Counsel for Teton County responded: "I haven't thought about that . . . I am not sure. I would have to sit and study it in a little more detail I think before I could give a fair answer."

[5] "General Conditions – Divisions 100 of the Idaho Standards for Public Works Construction" will be referred to as "General Conditions."

the construction period. The duties and responsibilities and the limitations of authority of Engineer as Owner's representative during construction are set forth in the Contract Documents."[6] (Emphasis added).

There are more provisions which further befog the role of Project Representative. Section 9.03, titled "Project Representative," states:

> If Owner and Engineer agree, Engineer will furnish Resident Project Representative *to assist Engineer* in providing more extensive observation of the Work. The authority and responsibilities of any such Resident Project Representative and assistants will be as provided in the Supplementary Conditions, and limitations on the responsibilities thereof will be as provided in Paragraph 9.09. *If Owner designates another representative or agent to represent Owner at the Site who is not Engineer's consultant, agent or employee, the responsibilities and authority and limitations thereon of such other individual or entity will be as provided in the Supplementary Conditions.*

(Emphasis added). Thus, this section, using the same term from Supplementary Condition 8.12, references the defined term "Resident Project Representative." However, the definitions section defines the "Resident Project Representative" as "[t]he authorized representative *of Engineer* who may be assigned to the Site or any part thereof." (Emphasis added). Thus, the Resident Project Representative cannot be the Engineer because the definitions define it as *the representative of the Engineer*.

Taken together, these significant inconsistencies and unresolved issues regarding Johnson's role and authority under the Contract render the district court's sole reliance on the Contract misplaced. Accordingly, the district court erred in granting summary judgment because there are genuine issues of material fact regarding the Contract upon which it relied to define the scope of Johnson's authority as agent.

> 2. *Other manifestations by Teton County and Johnson are unclear and separately contradict the Contract, thus providing additional genuine issues of material fact.*

While the Contract itself is problematic, complicating the matter further is the uncertainty stemming from Johnson's role with Teton County under the Contract. Johnson serves as the County Engineer and Public Works Director for Teton County. The Contract provides that Teton County was the Owner. However, there is no "attached evidence" to the Contract in the record

---

[6] While some of the Supplementary Conditions included deletions of conflicting provisions, Supplementary Condition 8.12 was added without deleting or in any way referencing Section 9.01 of the General Conditions.

specifying *who* had authority to sign on behalf of Teton County, as contemplated on the signature page of the Agreement.[7]

While there may be other contracts or manifestations from Teton County that limit Johnson's authority in his capacity as County Engineer or Public Works Director, it cannot be said that this Contract, as a matter of law, does so. Should the limitations of authority applicable to the Engineer and the Project Representative not apply to Johnson, there is nothing in the Contract itself, nor in the record on appeal for that matter, that precludes Johnson from acting on behalf of Teton County as Owner should Teton County have authorized him to do so. Importantly, in a request for admission, Teton County admitted that Johnson was an agent, but did not specify whether this agency was by virtue of his position as Public Works Director, County Engineer, or grounded in the Contract.[8]

This is particularly important here because on at least one occasion Johnson referred to himself as the "Owner" under the Contract during the early stages of the dispute with Eagle Rock. In December 2018, the President of Eagle Rock sent an email to Johnson requesting a meeting with him and Jorgensen Associates to discuss the disputed unsuitable base material.[9] The same day, Johnson responded, stating:

> I'm happy to meet but let me first share some thoughts for you to consider; When designing a project, there are few variables that aren't exact. Grubbing is one of those uncertainties. So you make some assumptions. In this case, the designer[10] assumed 6" of material be removed at the catch line and the quantity for the prism to be removed for the design "key" was calculated. That is how the model was run and how the grubbing quantities were determined. Obviously more than 6" was excavated and removed. After weeks of trying to figure things out, that is the determination I have come to. *As the owner*, I'm not allowed to tell you how to do your work. ERT was obviously not tracking material removed per lineal feet or we would have caught this discrepancy before Paul dropped a $100,000 change order

---

[7] The signature page of the Agreement—which was seemingly never signed by Teton County—includes the following statement: "If Owner is a public body, attach evidence of authority to sign resolution or other documents authorizing execution of this Agreement."

[8] "REQUEST FOR ADMISSION NO. 24.: Please admit that Daryl Johnson was an agent, acting on behalf of the County, in relation to the Project.
RESPONSE TO RFA NO. 24: Admitted. Darryl Johnson was identified as the point of contact for Teton County and *was an agent, acting on behalf of the County*. Paul Hamilton was identified as the point of contact for Eagle Rock Timber." (Emphasis added).

[9] In the email, Eagle Rock's President indicates that he wants to meet with Johnson *and Jorgensen Associates*— implying Eagle Rock's belief that it was Jorgensen, not Johnson, who was the Engineer under the project.

[10] Johnson refers to the "designer." Importantly, according to the Contract, the project was designed by Jorgensen Associates. It appears from the record that Johnson was employed by Jorgensen at some point in the design process and may have worked on the project's design.

on me for additional pit run material. Whose [sic] to say at this point whether the project could have been successful with less material having been removed. I'm not sure Teton County is responsible for extra material having been removed from the shoulders. ERT was compensated for the import overage.

Again, happy to discuss with you. I'm happy to invite Jorgensen to the party as well but guaranteed you will get the same story above in more detail.

Let's discuss.

Regards;

Darryl Johnson PE, PLS

Teton County Public Works Director

(Emphasis added).

In this email, Johnson clearly represented to Eagle Rock that he was "the owner" under the Contract. In addition to directly establishing how Johnson represented himself to Eagle Rock, this also evidences Johnson's belief that he was acting as the Owner at that time. As mentioned above, "[a]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, *the agent reasonably believes, in accordance with the principal's manifestations to the agent,* that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006). (Emphasis added). Thus, since Johnson portrayed himself as the Owner under the Contract in December, there is at least a disputed issue of fact as to whether he believed that his authority was that of Owner under the Contract during the critical discussions with Eagle Rock when the unsuitable base materials were first discovered.

Another unavoidable factor in seeking to understand the divergent roles and authority Johnson had in this transaction is the unusual position in which he found himself. After working for Jorgensen Associates, and apparently playing a significant role in designing this project, he was hired by Teton County and given the task of managing the same project he helped design. The record also indicates that Johnson played a role in the bidding process for the project and drafting the Contract while employed at Teton County. Thus, Johnson appears to have played a key role in the design, bidding, drafting of contracts, and oversight of the project.

Importantly, the genesis of this dispute concerns the projected amount of unsuitable base material—a projection made by Jorgensen Associates at a time when Johnson worked on the road project for Jorgensen Associates. The Contract indicates a subsurface report was prepared by Jorgensen Associates in 2017 for Johnson, who at the time worked for Teton County; however, the field exploration that the subsurface report was based on was completed in September 2014,

when Johnson still worked for Jorgensen Associates. Johnson began work at Teton County in November 2014.

While the record indicates that Johnson was still employed by Jorgensen Associates at the time of the field exploration, it is unclear from the record what role he played in that work. Still, the Contract provided that Eagle Rock "may rely upon the accuracy of the 'technical data' contained in such reports and drawings, but such reports and drawings are not Contract Documents. Such 'technical data' is identified in the Supplementary Conditions." The Supplementary Conditions provide that "[t]he technical data contained upon which [Eagle Rock] *may rely is sub-surface soil conditions*." (Emphasis added). Importantly, at oral argument, we inquired of Teton County whether "the assumptions that were made in the bid were based on [Johnson's] work?" Teton County's attorney replied: "I would concede *mostly his work*, your Honor, although there were others involved I believe."[11] (Emphasis added).

Thus, Johnson worked for Jorgensen Associates and gathered information contained in a report submitted to Eagle Rock. Eagle Rock had the contractual right to rely on this technical data in making its bid. While it is unclear whether Eagle Rock's reliance on this technical data in any way contributed to the miscalculation of the unsuitable base material, this again illustrates a troubling fact in this case: Johnson was personally involved with this project at every stage of its development—holding key roles at both Jorgensen Associates and Teton County.

Further illustrating Johnson's deep involvement was another statement from Teton County's attorney at oral argument. When this Court asked who prepared the Contract in question, Teton County responded: "I believe it was Mr. Johnson." Thus, we add contract draftsmen to the litany of potential hats Johnson wore in this project. While it is difficult to measure the degree to which having Johnson serve in these multiple roles may have contributed to the confusion at the heart of this controversy, at the very least it raises serious questions about how both Johnson *and* Eagle Rock perceived the extent of his authority to modify and interpret the Contract he apparently drafted.

Additionally, Teton County's course of conduct—and the manifestations of authority that flowed therefrom—is inconsistent with its position on appeal and throughout the litigation below.

---

[11] When we inquired further whether Johnson might potentially feel responsibility for the miscalculation of the subsurface material report, counsel for Teton County qualified his concession to note that the subsurface condition investigation, presumably for the subsurface condition report by Jorgensen Associates in the record, was completed by another firm on behalf of Jorgensen Associates.

Teton County maintains that there was no unsuitable base material discovered, that Johnson never indicated that Teton County would "make it right," and that Johnson had no authority to modify the Contract. If that is true, it is unclear why Teton County would have initially granted a change in Contract Price to pay for additional infill materials used to construct the road, while not also agreeing to pay the cost of removing the noncomplying materials that necessitated the additional infill. This is especially paradoxical because Teton County maintains that the removal was not required in the first place; yet it paid for the additional infill without offering a specific explanation as to why it did so.

The district court concluded that the Contract itself forecloses any claim of actual authority. We disagree for three reasons. First, as discussed above, the Contract is unclear as to Johnson's role. The plain language of the Contract demonstrates that Johnson was not named as the designated Engineer in the Contract. Since the Contract was never amended to name Johnson as Engineer, the limitations of the Engineer's authority in the Contract may not even apply to Johnson. Further, even if the inconsistencies of the Project Representative role can be resolved, there is a question as to how Johnson assumed that role. There are suggestions in the record that Johnson was the Project Representative, but there is no written notice or incorporated modification indicating the appointment of Johnson as Project Representative. While it is unclear whether written notice was required under the terms of the Contract, there are still no facts in the record indicating how Johnson was appointed or how Eagle Rock was informed of such. Importantly, Johnson's name only appears in Addendum #1 in the Contract. This was a document created prior to execution of the Contract, on Teton County letterhead, concerning the bid process. It indicates that it was submitted "BY: Public Works Director: Darryl Johnson, PE, PLS." This passing reference was the only time Johnson's name appears in the Contract.[12] Thus, Johnson's actual role is not plainly evident from the four corners of the multiple documents comprising the Contract because Johnson is never referenced or mentioned in any of the incorporated documents in connection with any role—other than that of the Public Works Director.

Second, the Contract also contains conflicting manifestations. On one hand it limits the authority of the Engineer but on the other it contemplates an "agent" who is only bound by the limitations, if any, stated only in the Supplementary Conditions. In other words, the Contract

---

[12] In Change Order Number 1, the Engineer's name and signature are left blank.

contemplates that the Owner can designate an agent to represent the Owner *who is not the Engineer* and not bound by any of the General Conditions. As referenced above, Section 9.03 states in part, "If Owner designates another representative *or agent to represent Owner at the Site who is not Engineer's consultant, agent or employee*, the responsibilities and authority and limitations thereon of such other individual or entity *will be as provided in the Supplementary Conditions*." (Emphasis added). Therefore, if Johnson was an agent of Teton County, and not the project representative or Engineer, there is no Supplementary Condition that would limit his authority.

Third, even if the Contract did apply to Johnson, an agent's reasonable belief of his or her own authority can still be in conflict with direct instructions of the principal. The Restatement explains:

> A principal's instructions may not address prior occasions on which the agent has contravened instructions. On prior occasions the principal may have affirmatively approved of the agent's unauthorized act or silently acquiesced in it by failing to voice affirmative disapproval. This history is likely to influence the agent's subsequent interpretation of instructions. If the principal's subsequent instructions do not address the history, the agent may well infer from the principal's silence that the principal will not demand compliance with the instructions to any degree greater than the principal has done in the past. It is a question of fact whether the agent is reasonable in drawing such an inference.

RESTATEMENT (THIRD) OF AGENCY § 2.02 cmt. f (2006).

Similarly, "[a]pparent authority is based on a third party's understanding of *signals of all sorts* concerning the actor with whom the third party interacts." RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt f (2006) (emphasis added). "When the third party knows the actor is an agent and knows the identity of the principal, the presence of apparent authority turns on the tie between these signals and the principal in the mind of the reasonable third party." *Id.* This is a fact-intensive question that looks to the reasonable belief of the agent. Accordingly, "[i]t is usually a question for the trier of fact whether a reasonable person in the position of a third party would believe that an agent had the authority or the right to do a particular act. It is a separate but related question of fact whether such a belief is traceable to a manifestation of the principal." RESTATEMENT (THIRD) OF AGENCY § 2.03 cmt. d (2006).

> 3. *These genuine issues of material fact preclude a grant of summary judgment.*

As discussed above, the unclear and contradictory provisions of the Contract provide genuine issues of material fact as to Teton County's manifestations of Johnson's authority as agent. Further, other manifestations by Teton County and Johnson contradict the Contract and create

additional issues of material fact. In sum, there are ample questions of fact that should be decided by a jury, rather than by the district court on summary judgment. These include, but are not limited to, questions of Johnson's authority to act: (1) did Johnson have actual authority; (2) what was the scope of any actual authority; (3) did Johnson have apparent authority; (4) what was the scope of any apparent authority; (5) what role, if any, did the Contract have on Johnson's authority; (6) were there other external manifestations by Teton County and Johnson, beyond the terms of the Contract, that manifested to Eagle Rock that Johnson had apparent authority to vary from the terms of the Contract?[13]

It must be remembered that, so far, these questions have only been considered by the district court in the context of summary judgment where "[d]isputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Berian v. Berberian*, 168 Idaho 394, 483 P.3d 937, 944 (2020) (quoting *Nelson v. Kaufman*, 166 Idaho 270, 274, 458 P.3d 139, 143 (2019)). At this stage, it is difficult to look at all the hats Johnson is purported to have worn as not lending at least some support to Eagle Rock's position that Johnson reasonably believed or projected himself as one clothed in authority. He was the County Engineer and Public Works Director for Teton County. At times in this litigation, Teton County has argued that Johnson was the project "Engineer" under the Contract, and at other times it claimed that he was the "Project Representative." Johnson also referred to himself as "the owner." He also previously worked for Jorgensen, played a role in designing the Chapin Lane project, and purportedly prepared the Contract in question. Given the many hats Johnson is alleged to have worn, we conclude that there are genuine issues of disputed fact as to whether one of the hats he wore gave him authority to waive or orally modify the Contract.

If Johnson had authority, actual or apparent, to act on behalf of Teton County and modify the Contract or waive provisions, then questions still remain as to whether Johnson waived the Contract, orally modified it, or acted in a way to implicate the other equitable remedies discussed by the district court in its decision on the first motion for summary judgment. Accordingly, we

---

[13] Of course, at trial these questions may all be subordinate to the primary factual question for the jury at the core of this dispute: whether Johnson actually told Eagle Rock to remove the inadequate base material and promised that Teton County would "make it right."

reverse the district court's grant of summary judgment and remand for further proceedings consistent with this opinion.

Inasmuch as we find that the district court erred in granting summary judgment, we need not address the other points of error raised by Eagle Rock.

**B. Eagle Rock's ratification argument went beyond the scope of the pleadings at summary judgment.**

During the hearing on the motion to reconsider, Eagle Rock also argued that Teton County ratified Johnson's action. In response, Teton County argues that ratification was beyond the scope of the pleadings because Eagle Rock did not assert it as a defense nor allege any facts to support that a ratification had occurred. Further, Teton County argues that since ratification was beyond the scope of the pleadings, it could not be considered by the district court when ruling on the motion to reconsider. We agree.

"This Court has repeatedly held that '*issues* considered on summary judgment are those raised by the pleadings.' " *Conner v. Hodges*, 157 Idaho 19, 26, 333 P.3d 130, 137 (2014) (emphasis added) (quoting *Vanvooren v. Astin,* 141 Idaho 440, 443, 111 P.3d 125, 128 (2005)); *Gardner v. Evans*, 110 Idaho 925, 939, 719 P.2d 1185, 1199 (1986); *Argyle v. Slemaker,* 107 Idaho 668, 669, 691 P.2d 1283, 1284 (Ct. App.1984). This longstanding principle is also bolstered by our notice pleading jurisprudence. As we have recognized, "[o]ur Rules of Civil Procedure establish a system of *notice* pleading." *Youngblood v. Higbee*, 145 Idaho 665, 668, 182 P.3d 1199, 1202 (2008) (emphasis added) (citing *Cook v. Skyline Corp.*, 135 Idaho 26, 33, 13 P.3d 857, 864 (2000)). We have held that a "complaint need only contain a concise statement of the *facts constituting the cause of action* and a demand for relief." *Id.* (emphasis added) (quoting *Clark*, 110 Idaho at 325, 715 P.2d at 995). Importantly, "[t]he general policy behind the current rules of civil procedure is to provide every litigant with his or her day in court . . . [and] the purpose of a complaint is to *inform the defendant of the material facts upon which the plaintiff bases his action*." *Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 484, 328 P.3d 456, 464 (2014) (emphasis added) (quoting *Clark*, 110 Idaho at 325, 715 P.2d at 995); *see also Loveland v. State*, 141 Idaho 933, 936, 120 P.3d 751, 754 (Ct. App. 2005) ("[T]he purpose of pleadings is to frame the issues upon which a cause is to be tried").

Here, no facts alleged in the complaint suggested a cause of action grounded in a principal's ratification of an agent's unauthorized act. In reading the complaint, Teton County would not have

17

been on notice that the issue of ratification was before the district court on summary judgment; thus, it was improper to consider it on reconsideration. The general facts in the complaint stress that the removal was "required" and allege that the "Project's engineer agreed that the Removal was necessary and consented to its completion." There were no facts alleged suggesting ratification by Teton County. The specific count for breach of contract, as alleged in the complaint, does not mention ratification. The alternative counts in the complaint seek only equitable relief based on the completion of the work and in no way reference the agent of Teton County or any act of ratification.

While the complaint need only contain a concise statement of the facts constituting the cause of action and a demand for relief, Eagle Rock's complaint contains no such concise statement that would put Teton County on notice that the material issue of ratification was the basis of its breach of contract claim. Accordingly, the district court did not err in not considering the issue beyond the scope of the pleadings. However, nothing in our decision precludes Eagle Rock from moving the district court for leave to amend its complaint on remand to include the issue of ratification.

## C. The district court erred by denying Eagle Rock's motion to amend its complaint.

Eagle Rock argues that the district court erred in not granting it leave to amend its complaint to add Johnson as a party and to assert claims against him personally. Specifically, Eagle Rock asserts that "[Teton] County had admitted that Darryl Johnson was its agent in relation to the Project, and had not raised any issue in relation to his authority until the County's second motion for summary judgment, filed on April 14, 2021. Only then was the issue of authority raised." (Internal citation omitted.) Thus, Eagle Rock contends that, in light of this change in position, the district court abused its discretion in not freely granting leave to amend. We agree.

Aside from amendments as a matter of right, Rule 15(a) of the Idaho Rules of Civil Procedure provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." I.R.C.P. 15(a). "Under Idaho law, motions for leave to amend pleadings are to be liberally granted . . . ." *Taylor v. McNichols*, 149 Idaho 826, 847, 243 P.3d 642, 663 (2010). Further, " '[i]n the absence of any apparent or declared reason ... the leave sought should, as the rules require, "be freely given" ' because an 'outright refusal to grant the leave without any justifying reason appearing for the denial ... is merely [an] abuse of [ ] discretion and inconsistent

18

with the spirit' of the Rules of Civil Procedure." *Id.* (quoting *Clark*, 110 Idaho at 326, 715 P.2d at 996). However, a district court can act within the bounds of its discretion when denying a motion to amend.

Grounds for denial include but are not limited to: "Undue delay; Bad faith and dilatory motive on the part of the movant; Repeated failure to cure deficiencies by amendments previously allowed; Undue prejudice to the opposing party, and Futility." *Zeyen v. Pocatello/Chubbuck Sch. Dist. No. 25*, 165 Idaho 690, 695, 451 P.3d 25, 30 (2019) (capitalization in original) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Further, in *Zeyen*, this Court reiterated that while "[t]imeliness is important in view of the *Foman* factors[,]" it is not dispositive because "timeliness alone is not a sufficient reason to deny a motion to amend." *Id.* (quoting *DAFCO LLC*, 156 Idaho at 756, 331 P.3d at 498.

Here, Eagle Rock moved for leave to amend its complaint in May 2021. More than six months later, in November 2021, the district court, citing *DAFCO LLC v. Stewart Title Guar, Co.*, 156 Idaho 749, 756, 331 P.3d 491, 498 (2014), denied the motion, finding that "there was a fairly significant delay in bringing the amendment without a change in stance from the County to justify it and prejudice to the parties as raised in Opposition and at the hearing." That is the extent of the district court's analysis.

Importantly, in its first motion for summary judgment, Teton County focused on the express agreement of the parties and the lack of a written modification under the terms of the Contract. In the supporting memorandum, while the Engineer is mentioned, Teton County never mentions Darryl Johnson. However, in the second motion, much of Teton County's brief was dedicated to the scope of Johnson's authority. Specifically, Teton County argued "the County Engineer and 'representative' in question, was not authorized to enter into, modify or amend public works contracts on behalf of the County, or to waive the terms thereof." This argument was not framed in the alternative and its ambiguous nature leaves Teton County able to argue both that Johnson did not alter, amend, or waive any provision of the Contract *and*, even if he did so act, Johnson acted beyond the scope of his authority.

In ruling on the second motion for summary judgment, the district court concluded that Johnson did not have authority to modify the Contract. In reaching this conclusion, the district court noted that there had "never been a change in Johnson's status as an agent generally." However, the district court did not address whether Teton County changed its position on the scope

19

of Johnson's authority and raised the possibility that he acted on his own. Further, while the district court faulted Eagle Rock for the "fairly significant delay" in moving to amend, it concluded that the County had not changed its stance as to *Johnson's status as an agent*—again, without addressing whether Teton County changed its position as to *the scope of Johnson's authority as agent*. This is particularly relevant because, consistent with Eagle Rock's view that this was a new position taken by Teton County, Eagle Rock filed the motion to amend shortly after the second motion for summary judgment was filed by Teton County in which it asserts that Johnson acted outside his authority.

The district court also addressed "prejudice" generally, without explaining or making any other finding on how granting the motion to amend would result in "unfair prejudice" to Teton County under *Clark*, *Zeyen*, and *Foman*. Arguably, based on the district court's second summary judgment ruling, Teton County would have been dismissed from the case even if the amendment had been granted and Johnson was added as a party to the complaint. Ultimately, because the district court failed to set forth the basis for its conclusions, its reasons for denying the motion to amend are conclusory. Thus, the district court failed to exercise reason in making its conclusions on the motion to amend.

Further, the district court did not act consistently within the legal framework set forth in Rule 15. Given the liberal nature of this rule, and in light of Teton County's new argument in its second motion for summary judgment, it appears that the district court did not "freely give" leave for Eagle Rock to amend its complaint. *Taylor*, 149 Idaho at 847, 243 P.3d at 663. Accordingly, we conclude that the district court also abused its discretion by not freely giving leave to Eagle Rock to amend its pleading.

### D. Attorney Fees

The district court awarded attorney fees to Teton County pursuant to Idaho Code section 12-120(3), concluding that Teton County prevailed and the gravamen of the claim was a commercial transaction. Eagle Rock argues that attorney fees should not have been granted below because Teton County should not have prevailed. For the reasons set forth above, we agree.

Idaho Code section 12-120(3) only applies to a prevailing party. *See* I.C. § 12-120(3) ("[T]he prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs."). Given the result on appeal, Teton County should not have prevailed

below. Accordingly, we vacate the award of attorney fees to Teton County. On remand, the district court may reconsider whether attorney fees should be assessed once the matter is fully adjudicated.

## IV. CONCLUSION

The district court's grant of summary judgment is reversed because there are genuine issues of material fact that preclude the grant of summary judgment. Further, the district court's denial of leave to amend the complaint is also reversed. Given the result on appeal, we also reverse the award of attorney fees below because Teton County is not the prevailing party at this stage of the litigation. *See* I.C. § 12-120(3). However, we affirm the district court in not considering the ratification issue because it was beyond the scope of the pleadings at the time it was presented. Accordingly, this matter is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to Eagle Rock as a matter of course. I.A.R. 40.

Chief Justice BEVAN, Justices BRODY, STEGNER and ZAHN **CONCUR.**