# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49535-2022

<table>
<tr><td>

ADAM DAVIS,

   Plaintiff-Appellant,

v.

GEORGE AND JESSE'S LES SCHWAB
TIRE STORE, INC., BRUCE BYRAM,
RICHARD BYRAM, GEORGE BYRAM,
and JESSE BYRAM,

   Defendants-Respondents.

</td><td>

Boise, September 2023 Term

Opinion filed: December 19, 2023

Melanie Gagnepain, Clerk

</td></tr>
</table>

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. Stevan H. Thompson, District Judge.

The decision of the district court is affirmed.

Browning Law, Idaho Falls, for Appellant. Allen Browning argued.

Hawley Troxell Ennis & Hawley LLP, Boise, for Respondents. Tracy Wright argued.

---

ZAHN, Justice.

This case arises from a dispute between Appellant Adam Davis, his former employer, George and Jesse's Les Schwab Tire Store, Inc. ("Les Schwab"), and two of its owners, Bruce Byram and Richard Byram (collectively "Respondents").[1] In late 2018, Richard emailed Davis to advise of an increased salary and performance expectations for the following year. In March 2019, Bruce noticed a shortage between the cash invoices and cash deposit from the previous day's business operations. Surveillance footage showed Davis bending down out of camera view in the area where the cash deposits were kept while he was alone in the store. Richard contacted law enforcement to report the details of his and Bruce's personal investigation, and the State later

---

[1] George Byram and Jesse Byram were also named as defendants but were later dismissed by stipulation of the parties.

arrested and charged Davis with grand theft. Respondents then terminated Davis's employment. The State later dropped the charges against Davis.

Davis sued Respondents and asserted four causes of action: (1) breach of Davis's purported employment contract, (2) false arrest by making false statements to law enforcement that led to Davis's arrest, (3) defamation per se for making false statements accusing Davis of theft, and (4) knowingly giving a false report to the police in violation of Idaho Code section 18-705. Respondents moved for summary judgment on all of Davis's claims, which the district court granted. Davis then attempted to appeal the district court's order granting summary judgment, but this Court dismissed his appeal because a final judgment had not been issued. Months later, the district court entered an appealable final judgment and this appeal followed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Davis worked for Les Schwab as an assistant manager from April 2016 until June 2019. In late 2018, Richard emailed Davis and discussed an increased salary for 2019 along with a list of performance expectations for the coming year. Davis claims that the terms outlined in that email are substantially the same as those in a written contract that he signed on January 1, 2019, which Davis indicated could not be found.

On March 28, 2019, Bruce noticed a $500 discrepancy between the cash invoices from the previous day's business and the cash that was ultimately deposited with the bank. Bruce spoke with his cousin and co-owner, Richard, about the discrepancy and they determined that neither of them had taken the money. They then spoke with Davis about the discrepancy and asked him to investigate. Davis looked through surveillance footage from inside the store and reported back to Bruce and Richard that he had not seen anything suspicious.

Bruce then reviewed the same surveillance footage. Cash deposits were kept in an area slightly outside of the surveillance camera's view. Footage from this camera showed Davis sitting in a chair before he stooped down outside of the camera's view in the area where the cash deposits were kept. Davis can then be seen reappearing thirty-four seconds later. Davis was alone in the store at this time.

Richard contacted the police and reported that the cash deposit for March 27 was approximately $500 short. Chief Sam Tower of the Rigby City Police Department began an investigation, which included interviewing two Les Schwab employees and reviewing the camera footage himself. Tower then interviewed Davis at the police station, where Davis denied any

wrongdoing. Tower returned to Les Schwab to speak with Bruce and Richard, and, while they were talking, Davis contacted Bruce and Richard about the situation.

Bruce and Richard met with Davis and claim that, during their conversation, Davis denied any wrongdoing but stated that he would pay Bruce and Richard $500 to drop the criminal investigation and provide him with a letter of recommendation for new employment. Following this conversation, Tower told Bruce and Richard that they should review more surveillance footage and deposit history to see if there was any additional unaccounted-for money. After reviewing more footage, Bruce and Richard reported to Tower that Davis had bent down near the area where the deposits are kept on several other dates. Bruce and Richard randomly selected four of these dates, checked the invoices and the cash deposits, and discovered a shortage on each date. The total cash shortage across these four dates was $2,058.52.

On May 10, 2019, Tower signed a probable cause affidavit detailing the results of his investigation and recommending that there was probable cause to believe that Davis had committed grand theft. In June 2019, the Jefferson County Prosecutor's Office charged Davis with grand theft. Bruce and Richard fired Davis after he was formally charged. The State dismissed the charges against Davis in January 2020. Bruce and Richard claim that they decided to drop the charges because the time and effort required to continue the prosecution would not be worth it.

Shortly thereafter, Davis sued Respondents asserting four causes of action: (1) breach of Davis's alleged employment contract, (2) false arrest for making allegedly false statements to law enforcement that led to Davis's arrest, (3) defamation per se for making allegedly false statements accusing Davis of theft, and (4) knowingly giving a false police report in violation of Idaho Code section 18-705. Respondents moved the district court for summary judgment on all of Davis's claims.

The district court granted Respondents' motion. On July 26, 2021, the district court entered an "Order for Dismissal with Prejudice," in which the district court purported to dismiss all of Davis's claims ("July 26 Order"). The July 26 Order included an Idaho Rule of Civil Procedure 54(b) certification stating that it was a final judgment from which an appeal could be taken. Davis timely appealed the July 26 Order.

On August 25, 2021, this Court issued an order conditionally dismissing Davis's appeal because it appeared that no final judgment had been entered in the case. The order suspended Davis's appeal for twenty-one days to provide Davis with an opportunity to file a response showing

3

why his appeal should not be dismissed. Davis never responded to the order, and, on September 21, 2021, this Court issued an order dismissing Davis's appeal, without prejudice.

On January 13, 2022, Davis moved the district court to amend the July 26 Order. In an affidavit submitted with his motion, Davis's counsel explained that Respondents' counsel had refused to redraft and stipulate to a corrected order. The district court granted Davis's motion to amend and entered an "Amended Final Judgment" on February 1, 2022 ("February 1 Judgment"). On February 18, 2022, Davis appealed the February 1 Judgment.

On February 28, 2022, Respondents filed a motion for relief from the February 1 Judgment under Idaho Rules of Civil Procedure 54 and 60(b). Respondents argued that they never received notice of the February 1 Judgment, that the district court was without jurisdiction to enter it, and, if the district court denied Respondents' request for relief from the judgment, that Respondents should be afforded additional time to file a motion for fees and costs since they had not received notice of the February 1 Judgment until after the deadline to submit their motion.

On March 28, 2022, the district court entered a new "Final Judgment" that dismissed all of Davis's claims with prejudice ("March 28 Judgment"). Two days later, the district court rescinded the February 1 Judgment because it had been improperly captioned and was entered without notice to Respondents. On March 30, 2022, Davis appealed the March 28 Judgment.

Respondents moved for relief from the March 28 Judgment, again arguing that the district court was without jurisdiction to enter the judgment. The district court denied Respondents' motion, holding that the district court had authority to enter the March 28 Judgment because it was an attempt to remedy the clerical errors in the February 1 Judgment and provide proper notice to the parties. Respondents requested costs and attorney fees under Idaho Code sections 12-120(3) and 12-121. It appears that the district court granted Respondents' request, but the district court's order is not in the record.

## II.    ISSUES ON APPEAL

1. Whether this Court has jurisdiction to hear Davis's appeal.
2. Whether the district court erred in granting Respondents' motion for summary judgment.
3. Whether Respondents' request for costs and attorney fees was timely filed with the district court.
4. Whether Respondents are entitled to attorney fees on appeal.

4

### III.  STANDARD OF REVIEW

"When reviewing an order for summary judgment, the standard of review for this Court is the same standard used by the district court in ruling on the motion." *Mendenhall v. Aldous*, 146 Idaho 434, 436, 196 P.3d 352, 354 (2008). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). "When deciding a motion for summary judgment, '[a]ll disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party.'" *Hilliard v. Murphy Land Co.*, 158 Idaho 737, 743, 351 P.3d 1195, 1201 (2015) (alteration in original) (citation omitted). "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Demoney-Hendrickson v. Larsen*, 171 Idaho 917, 921, 527 P.3d 520, 524 (2023) (citation omitted).

### IV.  ANALYSIS

#### A.  We have jurisdiction to hear Davis's appeal.

Respondents initially argue that this Court does not have jurisdiction to hear Davis's appeal. Respondents contend that Davis already appealed the district court's July 26 Order and should not be given a second opportunity to do so. They also argue that this Court's order dismissing Davis's first appeal did not remand the case back to the district court, so the district court only had the limited jurisdiction provided in Idaho Appellate Rule 13(b), which does not include entering a judgment.

Davis argues that he has timely attempted to appeal the district court's order granting summary judgment three different times and, as a result, Respondents' jurisdictional argument is without merit. Davis argues that this Court dismissed his appeal from the July 26 Order because the district court failed to enter an appealable final judgment. Because there was no final judgment, Davis argues that the district court was never divested of jurisdiction to enter a proper final judgment.

5

Idaho Appellate Rule 11(a)(1) provides that an appeal may be taken from a final judgment as defined in Idaho Rule of Civil Procedure 54(a). "A judgment is final if either it is a partial judgment that has been certified as final pursuant to subsection (b)(1) of this rule or judgment has been entered on all claims for relief, except costs and fees, asserted by or against all parties in the action." I.R.C.P. 54(a)(1). "A judgment or partial judgment must begin with the words 'JUDGMENT IS ENTERED AS FOLLOWS: . . .,' and it must not contain any other wording between those words and the caption." *Id.* A document that does not comply with Rule 54(a)(1) does not constitute a final judgment. *See Est. of Holland v. Metro. Prop. & Cas. Ins. Co.*, 153 Idaho 94, 99, 279 P.3d 80, 85 (2012).

Here, the July 26 Order was not a final judgment under Rule 54(a). The July 26 Order did not comply with Rule 54(a)(1) because, among other things, it did not begin with or even contain the words "JUDGMENT IS ENTERED AS FOLLOWS." It stated:

> TO ALL PARTIES AND THEIR COUNSEL OF RECORD:
>
> THIS MATTER came before the Court on Defendants' Motion for Summary Judgment.
>
> Upon consideration thereof, and granting the Motion for Summary Judgment, and pursuant to the Court's Decision Re: Summary Judgment entered on July 20, 2021, the claims against Defendants are hereby dismissed with prejudice.
>
> IT IS SO ORDERED.

A judgment is not final unless it complies with Rule 54(a). *Taylor v. Riley*, 162 Idaho 692, 705–06, 403 P.3d 636, 649–50 (2017) ("[W]e have rejected the contention that a judgment is or is not final if the trial court and/or parties intended it to be. The issue is not intent, but rather whether it is final under Rule 54(a)(1) of the Idaho Rules of Civil Procedure."). Accordingly, the July 26 Order was not a final, appealable judgment.

Given that the July 26 Order was not an appealable, final judgment, we reject Respondents' argument that we are without jurisdiction to hear Davis's appeal. This Court's order dismissing Davis's appeal from the July 26 Order was without prejudice. Because the district court failed to enter an appealable final judgment, it follows that the district court still had jurisdiction over the matter, including the authority to enter a final judgment from which Davis could appeal. *See Marks v. Vehlow*, 105 Idaho 560, 567, 671 P.2d 473, 480 (1983) (citations omitted) ("Because this was an attempt to appeal from a nonappealable order, the jurisdiction of the magistrate was not divested

6

under I.A.R. 13(b)."). Consequently, the district court had jurisdiction to enter a final judgment and we have jurisdiction to hear Davis's appeal from that final judgment.

**B. We affirm the district court's grant of summary judgment.**

Before addressing the merits of Davis's appeal, we first note that Davis's opening brief contains numerous citations to an augmented record on appeal. The day after he filed his opening brief, Davis moved this Court to augment the record with a variety of documents, some of which were already in the record on appeal and some of which had not been presented to the district court. On October 5, 2022, this Court issued an order denying Davis's motion to augment. Davis never corrected, or otherwise addressed, his augmented record citations in his briefing before this Court, including those in his reply brief filed nearly three months after this Court's order denying his motion to augment.

As a result, Davis's arguments on appeal rely heavily on evidence and information that is not contained in the record before us. The thrust of Davis's argument appears to be that the district court failed to draw an inference in his favor regarding Richard and Bruce's intent for contacting law enforcement. Davis relies on Respondents' accounting records to argue that Richard and Bruce knowingly made false statements because the accounting records apparently conflict with their statements. However, the accounting records are not in the record on appeal because Davis failed to demonstrate that he presented those records to the district court. Davis's failure to confine his arguments to the record on appeal is fatal to his arguments, which we will discuss in turn.

*1. We affirm the district court's grant of summary judgment to Respondents on Davis's claim for false arrest.*

The district court granted summary judgment to Respondents on Davis's false arrest claim. The district court concluded that Davis's false arrest claim required Davis to demonstrate at trial that the legal proceedings leading to his arrest were defective, illegal, or unlawful. While recognizing that Davis alleged that Richard and Bruce made a knowingly false statement to Tower in violation of Idaho Code section 18-705, the district court concluded that there was not a genuine issue as to whether any of the statements were knowingly false when made.

Davis argues that the district court erred in granting summary judgment because Richard and Bruce made false statements to Tower, which led to Davis's unlawful arrest. Davis claims that Richard and Bruce's statements to Tower regarding the allegedly stolen money were knowingly false because they were regularly taking money out of the till themselves and not accounting for it in their business records.

7

Respondents argue that the district court correctly concluded that statements Richard and Bruce made to Tower were opinion statements and were not knowingly false. Respondents also argue that Richard and Bruce did not rely on the business records when they reported the alleged theft to Tower, so whether the records were accurate or not has no bearing on whether their statements were knowingly false when made. In any event, Respondents argue that the business records are unreliable according to the employee that made the records.

A claim for false arrest requires a showing at trial that (1) the defendant, by the exercise of force or by an express or implied threat of force, caused plaintiff to be arrested; (2) the defendant acted intentionally; (3) the defendant acted unlawfully; (4) the arrest was against the will and without the consent of the plaintiff; and (5) damages. Idaho Civil Jury Instruction 4.10. "Where it appears . . . that the arrest and imprisonment were made pursuant to legal proceedings, it is necessary to allege facts showing wherein said legal proceedings or process were defective, illegal or unlawful." *Jones v. Green*, 66 Idaho 731, 734, 168 P.2d 834, 836 (1946).

We affirm the district court's grant of summary judgment because the district court correctly concluded that Davis failed to establish a genuine issue of material fact concerning whether Richard and Bruce knowingly made a false statement to Tower. As a result, Davis failed to establish that the legal proceedings related to his arrest were defective, illegal or unlawful.

It appears Davis asserts that the district court erred by not drawing the inference that Richard and Bruce knew Davis had not taken the money because they took money from their business themselves and their business records allegedly conflicted with the information Richard and Bruce provided to Tower. The record does not support this inference. Richard and Bruce admitted in their depositions that they sometimes took cash out of the till without accounting for it. However, Richard and Bruce were not in Les Schwab on March 27, 2019, which was the date of the $500 discrepancy that gave rise to their suspicions that Davis had stolen money. Richard and Bruce both testified that they were not responsible for the unaccounted-for money that led to Davis's arrest. And Richard and Bruce testified that they did not rely on business records when they communicated to Tower that money was missing on four separate dates; instead, they compared invoices from those dates to the corresponding cash deposit to determine whether there was a discrepancy.

As previously discussed, the business records that Davis relies on as support for this argument are not included in the record on appeal. As a result, there is no evidence from which to

draw any inferences in Davis's favor. The only evidence in the record suggesting that Richard and Bruce may have made a false statement is their admission that they sometimes took money from the till without properly accounting for it. However, Richard and Bruce also testified that they did not take money from the till on March 27, 2019, or on the dates that formed the basis of their allegations. This evidence is not sufficient to create a genuine issue of material fact concerning whether Richard and Bruce's statements to Tower that they believed Davis took the missing money was false. *See Finholt v. Cresto*, 143 Idaho 894, 897, 155 P.3d 695, 698 (2007) ("A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment."). Accordingly, we affirm the district court's grant of summary judgment to Respondents on Davis's false arrest claim.

> 2. *We affirm the district court's grant of summary judgment to Respondents on Davis's claim for defamation per se.*

"[T]o succeed on a defamation claim, a plaintiff is required to prove 'that the defendant: (1) communicated information concerning the plaintiff to others; (2) that the information was defamatory; and (3) that the plaintiff was damaged because of the communication.'" *Siercke v. Siercke*, 167 Idaho 709, 718, 476 P.3d 376, 385 (2020) (quoting *Elliott v. Murdock*, 161 Idaho 281, 287, 385 P.3d 459, 465 (2016)). However, a defendant is entitled to a qualified privilege when the allegedly defamatory statements are made to law enforcement prior to the institution of criminal charges. *See Berian v. Berberian*, 168 Idaho 394, 404–05, 483 P.3d 937, 947–48 (2020). The plaintiff must demonstrate malice or bad faith to overcome this qualified privilege. *See id.*

The district court concluded that Respondents were entitled to a qualified privilege because there was no genuine issue of material fact regarding whether Richard and Bruce acted with malice. The district court noted that Idaho law requires a showing of malice when allegedly defamatory statements are made to law enforcement. The district court reasoned that Davis admitted Richard and Bruce had no malice toward him prior to the allegedly defamatory statements and that, ultimately, there was no evidence that Richard and Bruce acted with malice.

Davis argues that the district court erred in granting summary judgment on his defamation per se claim because Richard and Bruce acted maliciously by falsely accusing him of grand theft. Davis argues that, as a result, the district court erred in concluding that Richard and Bruce were entitled to a qualified privilege for their statements.

Respondents argue that Davis has failed to demonstrate that the district court erred in granting summary judgment on Davis's defamation claim. They argue that Davis's opening brief

fails to cite evidence in the record demonstrating a genuine issue of material fact regarding malice. Respondents also point to Davis's testimony that he, Richard, and Bruce got along well, and Davis never previously felt any animosity from them.

We affirm the district court's decision because Davis has again failed to cite evidence in the record to support his assertions on appeal. Davis contends that Richard and Bruce's statements to Tower "were made with the sole intent of causing harm to [Davis] and there is no evidence to demonstrate anything other than malicious intent on the part of [Richard and Bruce]." Davis does not provide a record citation for this assertion. To the extent Davis argues that Richard and Bruce acted with malice because they made knowingly false statements to Tower, we reject those arguments for the reasons discussed above. In other words, because there is no genuine issue of material fact as to whether Richard and Bruce knowingly submitted a false statement to Tower, there can be no genuine issue of material fact concerning malice. Accordingly, we affirm the district court's conclusion that Respondents were entitled to summary judgment on Davis's defamation claim.

3. *We affirm the district court's grant of summary judgment to Respondents on Davis's section 18-705 claim.*

Davis's argument regarding his Idaho Code section 18-705 claim is difficult to follow. Section 18-705 is a criminal statute that makes it unlawful to "knowingly give[] a false report to any peace officer[.]" Davis asserted a civil cause of action based on Richard and Bruce allegedly violating section 18-705. The district court noted that this Court has already concluded that there is no private right of action for violations of section 18-705. *See Yoakum v. Hartford Fire Ins. Co.*, 129 Idaho 171, 175–76, 923 P.2d 416, 420–21 (1996). The district court also noted that Davis included argument regarding a defamation per se theory in the section of his briefing discussing his section 18-705 claim. To address the lack of clarity regarding Davis's theory of recovery, the district court concluded that Davis's argument should be construed as an argument that a violation of section 18-705 creates a private right of action. Since this Court has already concluded that section 18-705 does not create a private right of action, the district court correctly granted summary judgment to Respondents on this claim.

Davis appears to argue on appeal that he is entitled to damages for Richard and Bruce's alleged violation of Idaho Code section 18-705. He titles the section discussing this issue as "Criminal Actions Which Result in Injury to Another are Torts" and argues that Richard and Bruce's "violation of Idaho Code [section] 18-705 constitutes an intentional tort against [Davis]."

He also lists as an issue on appeal whether the district court "erred in determining that no private right of action is created under Idaho Code [section] 18-705." At the same time, however, Davis claims that the district court "erred by misstating [Davis's] argument as an attempt to create a private right of action from a criminal statute." Davis also argues that the specific tort cause of action he seeks to recover on is the tort of slander per se.

Respondents argue that the district court correctly concluded that no private right of action arises from a violation of section 18-705. Respondents recognize that Davis appears to be framing his argument as a slander per se claim, but Respondents argue that Davis did not list this as an issue on appeal. Regardless, Respondents maintain that the district court did not err in granting summary judgment in their favor even if Davis's claim is viewed as a claim for slander per se.

To the extent that Davis seeks to recover in tort for Richard and Bruce's alleged violation of section 18-705, we affirm the district court's conclusion that no private right of action arises under this criminal statute. *See Yoakum*, 129 Idaho at 175–76, 923 P.2d at 420–21. To the extent that Davis argues that his section 18-705 claim should be construed as a claim for slander per se, slander is simply a "defamatory assertion expressed in a transitory form." *Weitz v. Green*, 148 Idaho 851, 862, 230 P.3d 743, 754 (2010) (citation omitted). Because slander is just a form of defamation, we affirm the district court's decision for the same reasons discussed above regarding Davis's defamation claim.

4. *We affirm the district court's grant of summary judgment to Respondents on Davis's breach of contract claim.*

The district court held that there was no enforceable employment contract between Davis and Les Schwab. Davis claimed that the terms outlined in an email between the parties were the same as those in an alleged written contract that Davis claimed he signed the day after the email was sent. Based on the terms outlined in the email, the district court concluded that any alleged employment contract was unenforceable because it was not for a specified term and did not limit the reasons for which Davis could be fired. Therefore, the district court concluded that Davis was an at-will employee who could be terminated without cause.

Davis argues that there was an enforceable employment contract between Davis and Les Schwab for 2019, the terms of which were outlined in an email Richard sent to Davis. Davis argues that the contract was for a one-year term and specified that he was not an at-will employee, though Davis does not provide a citation to the record supporting this assertion. Davis argues that Respondents cannot use the "false criminal accusations, which [Respondents] created, as proper

cause for termination of [Davis]'s contract or employment." Davis also discusses whether Respondents are entitled to qualified immunity for making false statements. It is unclear why Davis discusses qualified immunity because he does not explain how that doctrine relates to his breach of contract claim.

Respondents argue that Davis has failed to demonstrate that the district court erred. Respondents point out that the only argument in Davis's appellate briefing concerning this issue is a single, conclusory paragraph with one inaccurate citation to the record. Therefore, Respondents argue that Davis has failed to demonstrate that the district court erred.

Initially, we note that Davis's theory of recovery on his breach of contract claim appears to have shifted over time. In his verified complaint, Davis alleged that he and Les Schwab "had an existing, written contract" and that "[t]he Contract is attached hereto and incorporated herein by reference as Exhibit A." The previously discussed email is attached to Davis's verified complaint as "Exhibit A." In his deposition, Davis testified that he signed a written contract the day after the email was sent that contained the same terms outlined in the email, except with one additional term relating to a training expectation. At oral argument on appeal, Davis's counsel stated that Davis was asserting both written and oral contract theories. Regardless of which theory of recovery Davis is attempting to advance, he agrees that the terms of his alleged employment contract are accurately stated in the email he attached to his verified complaint.

In Idaho, "[u]nless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons why the employee may be discharged, the employee is 'at will.'" *Venable v. Internet Auto Rent & Sales, Inc.*, 156 Idaho 574, 578, 329 P.3d 356, 360 (2014) (alteration in original) (quoting *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 206, 61 P.3d 557, 563 (2002)). An at-will employee may be "terminated by his employer at any time for any reason without creating liability[,]" unless the employer's motivation for termination contravenes public policy. *Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 176, 75 P.3d 733, 737 (2003). Davis has not alleged that Respondents' reasons for termination violated public policy.

The email setting out the terms of the alleged employment contract between Davis and Les Schwab states:

> With the new year, new salary, and new goals here is the list of your responsibilities and our expectations.

SALARY--$100,000 PER YEAR WITH 5 WEEKS VACATION. THIS TIME OFF NEEDS TO BE APPROVED BY BJ AND RICH. ALL TIME OFF WILL BE TRACKED AND WILL BE FOR JANUARY-JANUARY.

EXPECTATIONS & RESPONSIBILITIES

1.  INVENTORY

DAILY COUNT SHEETS AND MONTH END

2. TRUCK SHOP INVOICING

DAILY CHECK WITH THE TRUCK SHOP TO ENSURE ALL THINGS ARE BILLED TIRE AND ALIGNMENT RELATED

3. HUB TRAINING

SET SCHEDULE FOR ALL EMPLOYEES. BRAKE AND ALIGNMENT LEVEL 1,2,3. YOU ASSIGN TRAINING FOR EACH EMPLOYEE SO THEY UNDERSTAND THE EXPECTATIONS.

4. STORE MEETINGS

SCHEDULE IS SET. DOCUMENTED WITH SIGN IN SHEETS, CONTENT FOR MEETINGS COMES FROM MANAGER MEETINGS, FILED AND DOCUMENTED EACH MONTH.

5. BEST TIRE VALUE PROMISE PHONE SURVEYS

90% AVERAGE. ALL PHONES SHOULD HAVE CARDS WITH PROPER QUESTIONS TO ASK

6. WAGE COST

15% TARGET

We want to set a sales and profit goal for the year as well. We think that a sales goal of $5,800,000 is a good place to start, and $700,000 from the brake and alignment center should stretch us and still be achievable.

We affirm the district court's conclusion that Davis was an at-will employee whose employment could be terminated without cause. The email does not specify the duration of Davis's employment; it merely states that Davis's salary would be $100,000 "per year." The email also does not contain any terms limiting the reasons why Davis could be discharged. At his deposition, Davis was asked if the alleged contract "set out any terms under which [his] employment could be terminated[.]" Davis responded, "no." Davis also testified that the sales and profit goal mentioned in the email was merely a goal that did not carry any repercussions for his continued employment.

Davis fails to cite any evidence in the record suggesting that he was anything other than an at-will employee. Davis merely states, without citation to the record, that he testified that "the term of the contract was one year and [Davis] was not an at-will employee." Even if we were to accept

13

this unsupported statement, Davis's subjective understanding of his and Respondents' agreement is insufficient to demonstrate that he was not an at-will employee terminable without cause. *See Edmondson*, 139 Idaho at 179, 75 P.3d at 740 ("A plaintiff's subjective understanding is insufficient to establish an express or implied agreement limiting at-will employment." (citation omitted)). Accordingly, we affirm the district court's grant of summary judgment to Respondents on Davis's breach of contract claim.

## C. Respondents' request for costs and attorney fees at the district court was timely.

Davis discusses apparent errors in the district court's attempts at entering a final judgment without clearly articulating why these alleged errors are of consequence to his appeal. It appears that Davis may be arguing that Respondents' request for costs and attorney fees before the district court was untimely because Davis argues that, despite the July 26 Order not being a final judgment, Respondents had fourteen days from the July 26 Order to request costs and fees. Davis also argues that Respondents had fourteen days from entry of the February 1 Judgment to request fees but failed to do so. Davis appears to contend that Respondents' request for costs and fees within fourteen days of the March 28 Judgment was untimely.

The district court entered the February 1 Judgment in response to Davis's motion to amend the July 26 Order after this Court dismissed his first appeal for lack of a final judgment. The district court granted Davis's motion and issued the February 1 Judgment dismissing Davis's claims. The district court later admitted that the February 1 Judgment was improperly captioned and was entered without providing notice to Respondents.

Respondents moved the district court to set aside the February 1 Judgment after they were made aware that it had been entered, which the district court granted. In its order, the district court noted that the February 1 Judgment should not have been captioned as an "Amended Judgment" because the July 26 Order was not a final judgment. The district court stated that it would "rescind" the February 1 Judgment because it had been improperly captioned and entered without providing notice to Respondents. The district court later explained, while addressing Respondents' motion to set aside the March 28 Judgment, that the March 28 Judgment was "a proper amendment of the February [1] Judgment under I.A.R. 13(b)(4), 13(b)(6), and I.R.C.P. 60(a) to fix the clerical error in the title[.]"

Idaho Rule of Civil Procedure 54(d)(4) requires a memorandum of costs and fees to be filed "not later than 14 days after entry of judgment[.]" "Failure to timely file a memorandum of costs is a waiver of the right to costs." I.R.C.P. 54(d)(4).

Davis has failed to demonstrate on appeal that Respondents' request for costs and fees, which was filed two days after the March 28 Judgment, was untimely. Davis has not argued that the district court erred in its decision to correct the February 1 Judgment by issuing the March 28 Judgment. As a result, neither party has challenged the validity of the March 28 Judgment. Because the March 28 Judgment was validly entered, Respondents' motion for costs and fees filed two days later was timely under Rule 54(d).

**D. Respondents are awarded their reasonable attorney fees as a sanction against Davis's counsel.**

Respondents argue that they are entitled to attorney fees on appeal pursuant to Idaho Code sections 12-121 and 12-120(3). Davis does not request fees on appeal but maintains that Respondents are not entitled to fees under sections 12-121 or 12-120(3).

Idaho Code section 12-121 states that attorney fees may be awarded to the prevailing party when "the case was brought, pursued or defended frivolously, unreasonably or without foundation." Under Idaho Appellate Rule 11.2(a), the signature of an attorney on a court filing certifies that the attorney has read the court filing and that "to the best of the signer's knowledge, information, and belief after reasonable inquiry" the court filing is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." If an attorney signs a document in violation of Rule 11.2, this Court, on its own initiative or by motion, "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred" because of the court filing. I.A.R. 11.2(a).

"We have previously interpreted the frivolous filings clause to apply under the same circumstances that warrant awards under Idaho Code section 12-121." *Bergeman v. Select Portfolio Servicing*, 164 Idaho 498, 503, 432 P.3d 47, 52 (2018) (citation omitted). Critically, "Rule 11.2 sanctions are appropriate against an attorney when we have been convinced that the represented party does not 'bear[ ] responsibility for the legal arguments advanced on [that party's]

behalf.'" *Id.* (first alteration in original) (quoting *Funes v. Aardema Dairy*, 150 Idaho 7, 13, 244 P.3d 151, 157 (2010)).

We conclude that Davis's counsel, Allen H. Browning, violated Rule 11.2 and award Respondents a portion of their reasonable attorney fees pursuant to Rule 11.2, which are to be paid by Davis's counsel. We discuss the specific fees awarded below, but first address the basis for awarding sanctions against counsel. As discussed above, Davis's opening brief contains numerous citations to an augmented record even though this Court had denied Davis's motion to augment. At oral argument, counsel initially indicated that critical documents, such as Respondents' business records, were in the record. It did not appear that counsel was aware that the motion to augment had been denied months earlier. Davis's opening brief and the initial portions of counsel's oral argument relied heavily on documents that were not in the record on appeal.

After this Court denied Davis's motion to augment, counsel never filed an updated brief to remove the references to documents not contained in the record. Nor did counsel address the augmented record citations in his reply brief, filed three months after the denial of the motion to augment. Instead, the entirety of Davis's reply brief contains two record citations, neither of which support the repeated factual allegations contained in the reply brief concerning Respondents' allegedly false statements to Tower. Davis's reply brief contains a lengthy discussion regarding Respondents' business records despite those documents not being in the record.

We conclude that Rule 11.2 sanctions are appropriate against counsel because he signed both the opening and reply briefs, thereby certifying that the appellate arguments raised in the briefing were well grounded in the facts. In actuality, there were few, if any, facts in the record supporting the arguments raised on appeal. As a result, we conclude that counsel signed the opening and the reply briefs in violation of Rule 11.2. We are convinced that Davis should not bear responsibility for his counsel's actions and that counsel bears responsibility for the unsupported arguments contained in Davis's briefing on appeal.

Turning to the apportionment of fees awarded, we do not award Respondents any fees related to work performed on their jurisdictional argument because existing caselaw was on point and clearly foreclosed their argument. As discussed above, Rule 13(b) does not limit a trial court's jurisdiction when an appeal is taken from a non-appealable order. *See Marks v. Vehlow*, 105 Idaho 560, 567, 671 P.2d 473, 480 (1983). Respondents failed to cite this Court's forty-year-old precedent, which was controlling on the issue they raised. As a result, Respondents are not entitled

to any fees for work performed on this issue. We do, however, award Respondents their reasonable attorney fees for the remaining work done on this appeal. These fees are to be paid by Davis's counsel.

## V.    CONCLUSION

We affirm the district court's grant of summary judgment in favor of Respondents. We also award Respondents, as a sanction against Davis's counsel, their reasonable attorney fees for all issues other than the jurisdictional issue. Respondents are awarded their costs pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices BRODY, STEGNER, and MOELLER CONCUR.